### Herbert Bernard Mahs v. The State.

#### No. 4026.  Decided October 21, 1908.

**Burglary—Rape—Evidence—Rebuttal.**

Where upon trial for burglary with intent to commit rape, the State's evidence of identifying the defendant rested principally upon a letter which the State sought to establish by comparison of hand writing, and that the postmaster claimed that defendant had written a letter in the postoffice during his presence therein; whereupon defendant took the stand denying that he had written a letter in the postoffice but that he had written some postal cards therein, which testimony closed the case, and defendant then offered to recall the postmaster (who was but a short distance from the courthouse) to show by him that his statement to the jury that he saw defendant write a letter was through inadvertence, which motion the court overruled and forced defendant to proceed with the argument. Held reversible error, and no affidavit was necessary to defendant's motion.

Appeal from the District Court of Hemphill. Tried below before the Hon. H. G. Hendricks.

Appeal from a conviction of burglary to commit rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Hoover & Taylor,* for appellant.—Duffy v. State, 55 S. W. Rep., 176; Grosse v. State, 11 Texas Crim. App., 364; Nolen v. State, 14 Texas Crim. App., 480.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of burglary with intent to commit the crime of rape upon Amie Dustin.

The prosecutrix was on the 26th day of May, 1908, and had been since December 24, 1907, a waitress in a cafe owned by one Kellas, and occupied a room in his residence as her sleeping apartment. Appellant was cook in the same cafe, but did not sleep at the residence of the proprietor. The alleged burglary occurred on the 26th of May, 1908. Prior to the burglary prosecutrix became somewhat uneasy on account of the conduct of two men who had followed her along the street. Upon her invitation appellant subsequently became her protector and companion between the cafe and the Kellas residence. This brought about a friendly relation

between the parties. On one occasion prosecutrix, looking through appellant's clothing, found a letter he had written to a girl in another State. This letter indicated the existence of more than a friendly feeling between appellant and that girl, and alluded to the prosecutrix. The letter evidenced a decidedly more intimate relation towards the girl addressed than with the prosecutrix. Prosecutrix kept this letter and it was produced upon the trial. A day or two before the alleged offense appellant informed prosecutrix of his intended departure from Canadian for Kansas City. She replied that she did not care. He asked what was the matter. She replied, "Oh, enough." They immediately separated. On the following night, the 26th of May, prosecutrix attended a dance escorted by a Mr. Belden. She returned in company with Belden about 12 or 12:30 o'clock that night. Belden and prosecutrix separated at the entrance, prosecutrix going into the house. She did not know what became of Belden. After entering the house she lighted a lamp, went to the different rooms of the house, and finally to her own sleeping apartments. The window was up and blinds partially open in Mrs. Kellas' room. Prosecutrix found the same condition of affairs in her own room. She was at first disturbed about this, because the wind frequently blew the shutters open. She, however, later looked under her bed and discovered nothing, disrobed and went back to Mrs. Kellas' room; in fact, she was preparing to take a bath. After reaching Mrs. Kellas' room the second time, she testified she discovered somebody had been sitting upon the bed. Upon making this discovery she noticed the bed move slightly, and under it discovered a man. She immediately fled to a neighbor's house and gave information of the condition of things. As she went out of the house and off the premises she said she looked back and saw the intruder standing in the doorway of the kitchen. That at no time did he speak to her or in any manner attempt to catch hold of her, and her testimony does not make it appear that he came from under the bed while she was in the room. The Kellas family was away from home and had been for some days. Prosecutrix had been in the habit of inviting Miss Jackson to sleep with her. On this particular night or day preceding the night, she had informed Miss Jackson she need not come that night as she had invited another young lady. She did not, however, invite the other young lady, and she was to occupy the house that night alone. She says appellant had always treated her courteously and had in no way misbehaved towards her or in her presence. Belden left town on the train that night or early the next morning. Appellant had a day or two prior to this severed his relation as employee at the cafe, and had informed the prosecutrix of his intended departure from Canadian; and of his intended return to Denver in the State of Colorado. On the 28th of May prosecutrix received a letter in which the

writer stated that he had intended having intercourse with her on the night in question, and if she had resisted he would have killed her. This letter became a serious issue in the case on the trial. The State introduced in evidence the letter prosecutrix had taken from the pocket of appellant as a standard of comparison to show that the one received on the 28th of May was written by appellant. Some bank officials were called as experts; and testified in their judgment the same party wrote both letters, but denied being experts. Appellant denied under oath writing the second letter; he admitted writing the one prosecutrix had taken from his pocket. In this attitude of the case the postmaster testified for the State that appellant had written a letter on the evening of the 27th of May in the postoffice and mailed it. It was the State's theory that this was the letter received by prosecutrix on the 28th of May. Appellant took the stand and denied under oath that he wrote the letter in question, and further denied that he wrote any letter in the postoffice at all, but testified, in regard to the matter of the writing in the postoffice stated by the postmaster, that he wrote two postal cards and mailed them, one to his sister in Wyoming, and the other to his former landlady at Denver to secure apartments in her house he had occupied when he formerly lived at Denver. The testimony closed, and appellant then offered to recall the postmaster for the purpose of proving by him that when he stated to the jury that he saw appellant write a letter that it was through inadvertence; that he had paid but little attention to what appellant was doing; simply saw him writing and did not notice whether he wrote a letter or postal cards, and that he did not intend to swear that appellant had in fact written a letter; that his attention was not directed to the fact that whatever was written by appellant might have been postal cards instead of a letter. It was stated to the court, in this connection, that the postmaster was at the postoffice a short distance away in the town where court was being held, and an officer had gone for him and he would be produced in a few moments. The court refused to permit the introduction of this witness. In qualifying the bill he states, in effect, that he had notified counsel upon either side that he would not wait for witnesses to be brought in. That they must be kept present all the time, and he further states that no affidavit had been filed affirming the truth of the expected statements from this witness until on motion for new trial. The record does not disclose affirmatively at what time appellant discovered that the postmaster would thus qualify his evidence, but it was offered to prove these facts before the argument was begun. This testimony was very material under the circumstances. The prosecutrix had not identified the intruder in her house on the night of the 26th, nor did she undertake in her testimony to do so; in fact, not only her testimony, but the whole record tends to prove

the fact that she did not identify him. The State sought to do this by two circumstances; first, comparison of handwriting; and, second, that the postmaster saw appellant write and mail a letter. It will, therefore, be observed at once that the evidence of the postmaster was of a most material character, and tended, with some degree of cogency, to corroborate the testimony of the experts. This letter had been denied under oath, therefore, the testimony of the experts could not of itself furnish a basis of conviction under the terms of the statute. If, in fact, appellant wrote this letter, or the jury believed he wrote it, and such was the effect of the postmaster's testimony, it became a strong circumstance against the accused. It, therefore, became of first importance to appellant that this evidence be met, if possible, and to this end he offered the witness. It was rejected, first, because the court stated he would not permit witnesses to be brought in; that they must be present; second, that the postmaster's affidavit was only filed on motion for a new trial. Neither reason is valid under this condition of the record. The delay would only be for a few moments at least, and the affidavit is not necessary to inform the court of the materiality of rebutting or explanatory evidence when the evidence is tendered during the trial. The affidavit in regard to such testimony, if newly discovered, would find proper place in the motion for a new trial, but here the facts were known; had been ascertained, and were tendered before the argument was commenced. Under our statute, which authorizes the introduction of evidence at any time before the conclusion of argument, for due administration of justice, appellant was in ample time, and should have been accorded the right to have the postmaster explain away the circumstances sought by the State as evidence of guilt. It certainly would not have caused any longer delay in the trial to have introduced it then, than it would at any stage of the subsequent portion of the trial to the conclusion of the argument. It will be seen this evidence was not only material, but it would have explained away one of the most cogent facts against appellant. The evidence of the postmaster in connection with the letter tended somewhat to identify the letter. If appellant in fact wrote the letter, it tended to prove two facts for the State, first, identification of appellant as an intruder; second, it served also to throw light upon the reason or purpose of his being in the house. It would take no argument to disclose that these were crucial points in the case. If the postmaster had been permitted to explain his former evidence and testify to facts tendered as stated by counsel to the court, these two questions would have been presented to the jury in a much more favorable light for appellant, because if he did not write that letter, then there is but slight, if any, evidence to show the purpose of being in the house, and there was nothing to identify him as the party being in the house. We are of opinion, therefore, that this

action of the court was clearly erroneous, and in direct violation of that statute which permits the introduction of testimony in aid of the due administration of justice at any time before the argument has been concluded.

There are other questions in the case, but they may not arise upon another trial and are not discussed.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*