FRANK ELSWORTH v. THE STATE.

No. 3840.    Decided October 16, 1907.

**1.—Murder in First Degree—Change of Venue on ·Motion of Court—Conpurgators.**

Upon trial for murder where the motion for change of venue was not signed by compurgators in accordance with the statutes, and there was no bill of exceptions to the court's· action in overruling the motion, the matter could not be reviewed on appeal; the case not being one where the court should have changed the venue on his own motion.

**2.—Same—Evidence—Identity of Body of Deceased—Harmless Error—Hearsay.**

Where upon trial for murder the court had improperly admitted hearsay testimony as to the identity of the body of deceased, but it was admitted subsequently that the body found was that of deceased, the error was harmless. Such also was the testimony with reference to the identity of certain grips or suit cases found at the express office but which were also claimed by defendant.

**3.—Same—Practice—Questioning Witness—Judge.**

It is the province of counsel to ask questions of witnesses, but it is perfectly proper of the court in order to understand a witness to reiterate a question, or to have the witness explain his meaning.

**4.—Same—Evidence—Identification of Fruits of Crime—Rebuttal—Admitting Testimony Before Argument was Closed.**

Where upon trial for murder, it became an important question whether a certain grip or suit case belonged to deceased prior to the homicide and was a part of the fruits of defendant's crime, or whether the defendant owned said grip and bought the same prior to the homicide; and where the State relied for identification of said grip on certain ink spots thereon, it was reversible error to exclude testimony offered by the defense after argument had begun, to show that said ink spots got on said grip prior to the homicide while in defendant's possession, and that it was his property; there not appearing any want of diligence on part of defendant's counsel to offer this testimony at an earlier stage of the trial.

Appeal from the District Court of Potter; tried below before the Hon. J. N. Browning.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Barrett, Stewart & Templeton,* for appellant.—On question of change of venue on court's motion: Steagald v. State, 22 Texas Crim. App., 464; Massey v. State, 31 Texas Crim. Rep., 371; Webb v. State, 9 Texas Crim. App., 490. On question on propounding leading questions to witness by the court: Rangel v. State, 22 Texas Crim. App., 642; Wright v. State, 10 Texas Crim. App., 476; Craddick v. State, 48 Texas

Crim. Rep., 385, 88 S. W. Rep., 347. On question of introducing testimony after argument has begun: Hewitt v. State, 10 Texas Crim. App., 501; Arrington v. State, 20 S. W. Rep., 927; Cook v. State, 11 Texas Crim. App., 19; Dunnohoe v. State, 12 Texas Crim. App., 292; Lindley v. State, 11 Texas Crim. App., 283; Hines v. State, 37 Texas Crim. Rep., 339; Sebastian v. State, 39 S. W. Rep., 680.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree and his punishment assessed at life imprisonment in the penitentiary, and he prosecutes this appeal. The case against the defendant is one of circumstantial evidence and the evidence tends to show that deceased, Earl Dockery, was a young man some 18 or 19 years of age and late in the evening of the 4th of October, 1906, he was found near the Rock Island railroad track in the suburbs of Amarillo in a dying condition. He was stripped naked and had evidently been placed there by someone during the previous night; and a number of wounds were inflicted on his head, evidently with some sharp instrument, such as a hatchet. Several of these were fatal. He was still alive when found but was not able to articulate in a coherent manner. He lived till sometime next day when he died as a result of the wounds. The testimony tended to show that deceased had previously been working for the railroad company west of Amarillo and had at the time some $50 or $60. The evidence on the part of the State also showed that appellant and one Joe Burke were companions of the deceased for several days before his death and came from Hereford to Amarillo with him a day or two before his death. The State introduced a number of circumstances which tended to show that appellant and Burke were guilty of the offense; among other things, it may be mentioned that the State showed that subsequent to the death of the deceased, when appellant was apprehended, he was found in possession of a grip, or suit case, which was identified as having belonged to deceased in his life-time. The identification of this valise consisted principally of ink spots on same by which the witness identified it as the property of deceased. This is a sufficient statement of the case in order to present and discuss the assignments.

Appellant made a motion for a change of venue but there were no compurgators signed to same and it was not in accordance with the statute, nor did appellant take any bill of exceptions to the action of the court in overruling said motion for a change of venue. So it is not in a condition to be reviewed. However, counsel insists that under some expressions used in the Steagald v. State, 22 Texas Crim. App., 495, that the court should have changed the venue in this case of his own motion. We do not believe the facts of this case on the question of venue, as suggested by this record, show anything like the conditions surrounding the Steagald case with reference to a change of venue.

In the statement of facts, we notice there is a bill of exceptions taken to the testimony of O. M. Eakle. The State was permitted to prove, over the objection of appellant, that the father of deceased, identified the body as that of his son. This should not have been permitted, as it was hearsay. However, we notice that subsequently it was admitted that the body of deceased was that of Earl Dockery and so the error committed was harmless. As presented we believe it was competent for the State to show by the witness, W. A. Stewart, that he found two grips in the express office at the place where he found Elsworth and Burke and that these grips were claimed by Elsworth and Burke, but he was not authorized to state the fact that he learned or found that two grips were shipped from certain points to other points, unless he knew the fact himself. Not having seen them shipped, such testimony was hearsay as to him. However, we take it that any errors in this matter were eliminated by the fact that the identical grip identified by the State, as that of the deceased, was claimed by appellant as his property. We do not believe that the question asked by the judge, to wit: "did you tell him, that is, defendant, that what he might say to you might be used against him? and that the witness answered, "Yes, sir," rendered the statement inadmissible. Of course, it is the province of counsel to ask questions of witnesses, but it is perfectly proper for the court, in order to understand a witness, to reiterate a question, or to have the witness explain his meaning.

The material question presented for review in this case is raised by two bills of exception taken by appellant to the refusal of the court to permit two witnesses to testify as to how certain ink spots got on the valise identified by the State's witness as a valise belonging to deceased prior to his death, and claimed and identified by appellant as the valise owned by him prior to the death of deceased and which he claimed to have purchased in the town of Amarillo. This testimony was not offered during the production of testimony by either the State or defendant but was offered after the testimony had been closed and after all the arguments had been made in the case, except the closing argument on the part of the State. The first bill of exceptions is to the refusal of the court to receive the testimony of the witness, Fred Scoggins and in order to present the matter fully we copy the bill of exceptions which is as follows:

"Be it remembered, that upon the trial of the above entitled and numbered cause, that while counsel for the defendant was arguing said cause to the jury, and before, the State's attorney had made the closing argument for the State: The defendant, Frank Elsworth, offered to and could have proved by the witness, Fred Scoggins, that he, the said Fred Scoggins saw, M. F. DeWitt, upset and spill a bottle of ink on a writing desk, and that the ink ran off the writing desk, and spattered on to Frank Elsworth's new suit case. That the said Scoggins said at that time to M. F. DeWitt, you have played hell with Frank's new suit case.

That this occurred in M. F. DeWitt's saloon in Amarillo, Potter County, Texas, in September, 1906, and before the alleged finding and murder of Earl Dockery.

That for fuller particulars as to what the said Fred Scoggins would have sworn to, and what defendant offered to, and could have proved by said witness, see Fred Scoggins' affidavit, which is marked " Exhibit A," and made a part of the motion for a new trial in this case. That the said motion for a new trial and said affidavit are a part of the record in this case. That the affidavit of the said Scoggins, which is a part of the motion for a new trial in this case, is hereby made a part and referred to as a part of this bill of exceptions.

That the State and defendant had both closed the evidence, but that the closing argument for the State had not yet been made, when the defendant made the offer to and could have proved as set out above, and as contained in said Scoggins affidavit. That when the defendant made the above offer to prove, that the State's attorney objected to the same on the ground that the evidence had been closed, and the court sustained said objection. That the defendant did then and there duly except to the ruling of the court. That the defendant could and would have proved all the facts as set out above in regard to said Fred Scoggins' testimony and all the facts as contained in the said affidavit of said Fred Scoggins which affidavit is made a part hereof. That the testimony of the State's witness Roggenbuch in which he identified the suit case, that the defendant claimed as his own, as the suit case of Earl Dockery, in part by some ink spots that were on said suit case, which is a part of the record and statement of facts in this case, and is hereto referred to, and made a part hereof, by the defendant in order to show the competency and materiality, of said Scoggins' testimony. That the testimony of the defendant, Frank Elsworth, in which he testified that the suit case, which Roggenbuch identified as the suit case of Earl Dockery, was his own suit case, and that he did not know how such ink spots got on said suit case, is hereto referred to and made a part of that bill, in order to show the competency and materiality of said Scoggins' testimony. That the testimony of the defendant as stated above is a part of the record in this cause. Wherefore, this defendant now tenders this bill of exceptions, and asks that the same be approved, signed and filed as a part of the record in this case.

The foregoing bill of exceptions is signed and approved with this explanation and qualification: The testimony of the witnesses M. F. DeWitt and Fred L. Scoggins, were offered by defendant's counsel substantially as stated in the bill of exceptions. Counsel for the State objected upon the ground that the testimony of the case had been closed; most of the argument made to the jury, and that the defendant was not entitled to introduce this additional testimony, because he showed no sufficient diligence why he had not discovered and offered the same at the proper time; thereupon counsel for defendant, and especially L. C. Barrett, admitted that they could not show the diligence

demanded by the State's counsel, and gave as their excuse for not discovering and offering this evidence at the proper time, that defendant and his counsel were not apprised until a few minutes before, of the occurrence of the upsetting of the bottle of ink, and therefore they did not know that these witnesses could testify as then offered and they could not inquire, of the witness on that point. Counsel for defendant further states in substance that the only question in the way of admitting the proposed testimony at that time was the question of diligence on defendant's part, and they insisted that it was addressed to the sound discretion of the court.

I state it as a fact that these witnesses, M. F. DeWitt and Fred L. Scoggins, were sworn with other witnesses and placed under the rule at the beginning of the trial on Tuesday, June 3, 1907, and in my instructions to the witness I gave them permission to talk to counsel on either side at any time, provided no other witness was present while they were talking with such counsel about their testimony. The witness Fred L. Scoggins had been on the witness stand twice—once for the State and once for the defendant—and while he was on the stand in defendant's behalf he was required by defendant's counsel to examine the grip or suit case in question and was interrogated at considerable length by both sides as to what he knew about the same.

I state this further fact that at the time the proposed testimony mentioned in this bill was offered, counsel for defendant made no statement to the court of their efforts to ascertain from the witnesses DeWitt and Scoggins, how the ink spots came to be upon the grip or suit case; and I was not informed of such effort on counsel's part until the affidavits of L. C. Barrett and G. W. Warton, attached to the motion for a new trial, were read at the hearing of the motion on Saturday, June 15, 1907.

I believed at the time said proposed testimony was offered and believe yet, that sufficient diligence was not shown on defendant's part as to why the testimony was not discovered and introduced at the proper time; and that was and is my reason for refusing to admit it."

The second bill of exceptions is to the rejection by the court of the testimony of the witness M. F. DeWitt and said bill presents the matter in a similar way to the preceding bill and it is not necessary here to copy same.

We would observe further, that this same question, as to the refusal of the court to receive this testimony was raised in the motion for a new trial and accompanying it are affidavits of the witnesses, showing that they would testify substantially as set out in said bills of exception.

Article 698, Code of Criminal Procedure, provides that, "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appear that it is necessary to a due administration of justice."

It has been held in a number of cases that the refusal of the court

to admit testimony before the closing of the argument, is a matter within the sound discretion of the court and the case will not be reversed, unless it appears that this discretion has been abused, that is, as we take it, that under all the circumstances, it appears that the appellant, without fault on his part, has been prejudiced by the refusal of the court to admit the testimony. See authorities cited in White's Code Criminal Procedure, Par. 766, subdivision 2.

The court in this case, appears to have appreciated the importance of the testimony for the appellant, offered through the witnesses Scoggins and DeWitt. Indeed, he was bound to concede the importance of this evidence inasmuch as the State, as an important circumstance against appellant, identified the valise found in his possession after the homicide, as that of deceased by the ink spots thereon, and the testimony of appellant was in rebuttal of this testimony and showed that the ink spots got on the valise while in appellant's possession before the homicide. The court, however, appears to predicate his ruling on the ground that appellant had not used sufficient diligence in order to avail himself of the testimony of these witnesses.

We think it is made clear by the bills of exception in connection with the affidavits of the witnesses, which are a part of the bills, that appellant could not have foreseen the identification on the part of the State, of the valise by the ink spots until during the progress of the trial when said valise was identified according to the testimony of the State's witness, by the ink spots. This testimony, being elicited against appellant during the trial, he could not begin to use diligence to find counter testimony until it was brought to his attention, and we fail to see that he was lacking in diligence in endeavoring to discover testimony of a rebuttal character. The record shows that as soon as he did discover it, which was before the argument closed, that he then asked the court to permit him to introduce it. This the court refused to do as heretofore stated, because in the opinion of the court, appellant was lacking in diligence in finding out about said rebutting testimony.

We can not agree with the learned judge that appellant was guilty of laches in this regard and we believe the court erred in not permitting the appellant to avail himself of the testimony, so that the jury might have all the evidence on this point to determine this important question as to whose property the valise was. Whether it belonged to deceased prior to the homicide and was a part of the fruits of appellant's crime, or whether appellant owned said valise and bought same prior to the homicide.

For the error of the court in refusing to permit this testimony and for refusing to give appellant a new trial, because of the improper rejection of same this case must be reversed and remanded. We do not deem it necessary to make any observations with reference to the bills of exception to the rejection of testimony offered by the State during the progress of the argument. We think that should have been received, but that question will, of course, not occur again and no doubt

the State will place Mrs. Morris on the stand and elicit from her testimony in regard to the identity of appellant, as being the person who stopped with deceased Earl Dockery, at her lodging house on the night of the 3rd of October, 1906.

For the error of the court in refusing to permit the testimony of the witnesses Scoggins and DeWitt, the judgment is reversed and the cause remanded.

*Reversed and remanded.* ·

Davidson, Presiding Judge, absent.