### JUAN MANCHA v. THE STATE.

#### No. 232.    Decided December 1, 1909.

**Carrying Pistol—Postponement—Practice in County Court—Statutes Construed—Impeachment—Discretion of Court.**

Upon trial of unlawfully carrying arms there was no error in the court's refusal to postpone the case, after the evidence was closed, to permit the defendant to issue process for additional witnesses and await their presence, to prove the general reputation of State's witnesses for truth and veracity to be bad, no abuse

of the court's discretion, and no injury to defendant's rights having been shown, or that the due administration of justice had been impeded.

Appeal from the County Court of Uvalde. Tried below before the Hon. T. M. Milam.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was convicted in the County Court of Uvalde County on the 28th day of June, of this year, of unlawfully carrying arms, and his punishment assessed at a fine of $100.

The evidence of the State tended to show that at the "Cinco de Mayo" celebration in the town of Uvalde on May 5, 1909, appellant had a pistol and fired two shots from it. That immediately on doing this he gave the pistol to one Pedro Flores and said to him, "Here take this and tell them it is yours and there will be nothing more of it." To prove these facts the State produced Ylario Mayo and Pedro Flores. Appellant introduced three witnesses besides himself who distinctly contradicted the testimony of the State and was to the effect, in substance, that Pedro Flores had fired the pistol and that appellant had no pistol. In rebuttal the State introduced H. P. Graham, who was constable of precinct No. 1 of Uvalde County, and W. R. Hiler, who was deputy constable, both of whom, in substance, testified that appellant had and fired the pistol, and that they recognized him as the person who had done so.

There is only one question raised on the appeal, which is presented in many forms, and that relates to the action of the court in refusing to postpone the case until after supper to permit the issuance of process and await the presence of numerous witnesses named, by whom it was stated that it could be shown that they were acquainted with the general reputation of both Graham and Hiler for truth and veracity, and that this reputation was bad. It is recited in the bill of exceptions that the complaint and information in the case were filed about 2 o'clock p. m. on June 28, 1909; that the trial of same was begun about 2:30 p. m. on same day, and that the State first placed on the stand Pedro Flores and Ylario Mayo and rested, the other witnesses, Graham and Hiler, being at the time and all the time during the trial in the courtroom. That thereupon appellant introduced his witnesses who, with himself, testified that he did not have a pistol, whereupon the defendant rested, and the State then reopened the case and placed Graham and Hiler on the stand. That at this stage of the proceedings the State rested its case; that at the time it was after 7 o'clock p. m.

and that the argument of the case had not yet begun. That thereupon appellant's counsel requested the court to postpone the case until after supper for the purpose of allowing them to get the witnesses, who were in the city of Uvalde, and who, it was recited, could have been obtained in ten minutes. The bill further recites that they asked at this time for the issuance of process for these witnesses, tendering a list of same; that the court refused to allow the process to be issued, declined to delay the proceedings, and also refused to have said witnesses brought into court. This bill is allowed with the explanation that while the complaint and information on which the case was tried were filed on the 28th day of June, 1909, that the case really was filed on the 15th day of May, the same year, and that the new complaint and information were allowed for the purpose of inserting additional counts therein. That in the original case the witnesses Graham and Hiler were summoned as shown by a return of the subpoena, and that in the present case, after announcement of ready, the rule was demanded and all the witnesses were brought up and sworn, including Graham and Hiler. That the witnesses were then placed under the rule except Graham and Hiler, who were excused by both parties, and remained in court during the trial. That the State thereupon introduced two witnesses and rested; that the appellant introduced his witnesses and rested; that the State then introduced Graham and Hiler, and that thereupon appellant asked for a recess in order to have subpoenas issued and served on witnesses who were supposed to impeach Graham and Hiler, and that the court refused to grant such postponement.

Article 698 of the Code of Criminal Procedure is as follows: "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appear that it is necessary to a due administration of justice." It has not infrequently been held that where the evidence has been closed, and before argument, it is very much in the discretion of the court to admit other testimony, and that a refusal to do so will not constitute reversible error unless it is shown that defendant is thereby prejudiced. Dement v. State, 39 Texas Crim. Rep., 271; Gonzales v. State, 32 Texas Crim. Rep., 611; Nalley v. State, 28 Texas Crim. App., 387; Hendricks v. State, 28 Texas Crim. App., 416; Farris v. State, 26 Texas Crim. App., 105; Testard v. State, 26 Texas Crim. App., 260; Timbrook v. State, 18 Texas Crim. App., 1; Nolen v. State, 14 Texas Crim. App., 474; George v. State, 11 Texas Crim. App., 95; Moore v. State, 7 Texas Crim. App., 14; Noftsinger v. State, 7 Texas Crim. App., 301; Phillips v. State, 6 Texas Crim. App., 44; Reardon v. State, 4 Texas Crim. App., 602; Jones v. State, 3 Texas Crim. App., 150. An examination of the cases will disclose that ordinarily where the action of the court in refusing to grant a postponement or to permit the introduction of evidence after the argument has begun, it has been in cases where the

failure to produce the evidence was without fault on the part of litigants or their counsel. Such were the facts in the case of Hewitt v. State, 16 Texas Crim. App., 501. In that case, as it appears from the record, the witness tendered, Mrs. Hewitt, was on the night when the case was closed, sick and unable to appear, and that having knowledge of this fact counsel for the defendant there stated to the court that she was unable to appear, but they would offer her testimony the following morning. It is stated as a fact in the opinion that at this time Mrs. Hewitt was sick and unable to attend and testify; that the court and district attorney were so informed. In that case Judge Hurt says: "There was not the slightest circumstance indicating a disposition on the part of counsel for the defendant to impede the progress of the trial or trifle with the court. How the introduction of that evidence at that time could even tend to obstruct or trifle with the due administration of justice, we fail to comprehend." Her testimony affected the merits of the case and was, as is stated in the opinion, of great importance. In the case of Elsworth v. State, 52 Texas Crim. Rep., 1, 104 S. W., 903, the same general question was considered. Judge Henderson, speaking for the court there, seems to place the action of the court upon a rational basis. He says: "It has been held in a number of cases that the refusal of the court to admit testimony before the closing of the argument is a matter within the sound discretion of the court, and the case will not be reversed, unless it appears that this discretion has been abused; that is, as we take it, that, under all the circumstances, it appears that the appellant, without fault on his part, has been prejudiced by the refusal of the court to admit the testimony." A further inspection of this case will show that the testimony sought to be rebutted by Elsworth was elicited during the trial, and it is stated: "The testimony, being elicited against appellant during the trial, he could not begin to use diligence to find counter testimony until it was brought to his attention, and we fail to see that he was lacking in diligence in endeavoring to discover testimony of a rebuttal character. The record shows that as soon as he did discover it, which was before the argument closed, he then asked the court to permit him to introduce it." In the later case of Mahs v. State, 54 Texas Crim. Rep., 390, the decision of the court is rested somewhat on the same ground, and upon the further ground that the testimony was material and explanatory of a statement theretofore made by the witness, and that appellant was not lacking in diligence in tendering same. In all cases where this court has ever reversed a conviction, it will be found on examination of the authorities that the testimony sought has been in respect to the guilt or innocence of the defendant, and of a material character. Here the witnesses tendered were not claimed to have any knowledge of the facts at all. In any event, by analogy it is not certain that under any circumstances a trial should be delayed or testimony of a

mere impeaching character admitted after the testimony was closed. But, however this may be, it seems manifest that as here presented we ought not to set aside the conviction on the sole ground of abuse of discretion by the trial court. The evidence of the case discloses incidentally that an effort had been made to impeach the witness Graham a short time before this trial. It is not denied that appellant knew that he would be a witness. The bill of exceptions renders it certain that they must have known that he was a witness in the case. It is not claimed that at the time he was sworn as a witness that they did not know his reputation, or the names of the witnesses by whom it could be shown. Indeed, if his reputation for truth and veracity was bad, it is presumable that it would be known to appellant and his counsel. Even when tendered as a witness, there was then no effort to obtain process for the witnesses to impeach him, but as shown by the bill, when the testimony was all concluded, then for the first time process was sought for numerous witnesses by whom it was stated the witness could be impeached. Every court in the nature of things should have some reasonable control of its own sessions and sittings. While not the most important thing, reasonable diligence in dispatching business is to be commended. If in this case counsel for appellant were entitled, as a matter of right, to have process to secure witnesses to impeach Graham and Hiler, it would follow that the State also should have a reasonable time to obtain witnesses to sustain them. Just where the controversy would stop or at what time the court would be authorized to require the evidence to be closed would, if appellant's position is to be maintained, be a matter difficult to determine. We do not mean to say that the action of the court is such as if we had been presiding we would have followed. The judge presiding was on the ground, acquainted with the business of his court and other demands on his time. We are not. The discretion rested with him. It is true, this was a judicial discretion not to be abused, but we can not say from this distance that he has abused the discretion which the law wisely confides in him.

Finding no error in the action of the court, the judgment of conviction is affirmed.

*Affirmed.*