## WILL ROBERTS v. THE STATE.

### No. 8120. Decided April 16, 1924.

**1.—Murder—Continuance—Want of Diligence.**

Where the absent witnesses were character witnesses and the motion did not show legal grounds for delay, there was no error in overruling the application.

**2.—Same—Motion for New Trial—Practice on Appeal.**

In the light of the verdict confining defendant in the penitentiary for ninety-nine years, the relation of the parties the unfriendly atmosphere surrounding appellant at the time of the trial in connection with other matters in the motion, a new trial should have been granted.

**3.—Same—Evidence—Improper Testimony.**

Where the testimony of the witness for the State was neither responsive to the questions propounded nor legitimate, and it was doubtful whether the prompt action of the court below in withdrawing the testimony mentioned rendered it harmless a new trial should have been granted .

**4.—Same—Practice in Trial Court—Introduction of Testimony.**

Where, upon trial of murder, appellant closed his case without the introduction of evidence and insisted that on the conceded fact, it was apparent that he acted in self-defense and that there should be no conviction, but the court proposed to submit the case to the jury and charge upon provoking the difficulty, when defendant asked the privilege of introducing his wife to show that there was no testimony supporting such charge of provoking the difficulty, his motion should have been granted, under the facts of the instant case.

5.—Same—Practice in Trial Court—Additional Testimony—Provoking Difficulty.

Considered in the light of the record, this court is of opinion that the due administration of justice demanded that the appellant be accorded the privilege of putting before the jury the testimony of his wife, which he offered, and the trial judge was not warranted in denying this privilege, as her testimony would have placed the tragedy in a light much more favorable to the appellant than did that of the State, specially with reference to the issue of provoking the difficulty. Following: Mendoza v. State, 225 S. W. Rep., 169, and other cases.

Appeal from the District Court of Caldwell. Tried below before the Honorable M. C. Jeffrey.

Appeal from a conviction of murder; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*E. B. Coopwood* and *Nye H. Clark,* for appellant.—On question of continuance and public prejudice: Mickel v. State, 213 S. W. Rep., 665.

On question of defendant's threat against his wife: Woodard v. State, 51 S. W. Rep., 1122; Heney v. State, 122 id., 34; Caldwell v. State, 115 id., 597; Morgan v. State, 136 id., 1065.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of ninety-nine years.

Appellant was a tenant upon the farm of Mrs. Twitty. Her son, Gip Twitty, the deceased, represented his mother in the management of the farm. He was shot and killed by the appellant, the homicide taking place at the home of the appellant and about 200 yards distant from the home of the deceased.

A motion to continue the case was overruled. The date of the homicide was the 11th of April. The indictment was returned on the 18th and the trial took place on the 25th of that month. The deceased was a white man, the son of a widow and of favorable standing in the community. Appellant was a negro who had recently moved to the county. He was placed in jail, and being unable to employ counsel, the court, on the 21st day of April, appointed two attorneys to represent the appellant. One of them, however, failed to serve. On the evening of April 21st, relatives procured an additional counsel. It is claimed in the motion that the conditions prevailing precluded a sufficient opportunity to prepare for trial. This is given in the motion as an explanation for the failure to subpoena the witnesses. The wit-

97 T. C.—19.

nesses named were character witnesses, and the motion does not show legal ground for delay.

It is insisted that, viewed in the light of the verdict, the relation of the parties, the unfriendly atmosphere surrounding appellant at the time of the trial, in connection with other matters advanced in the motion, the motion for new trial should have been granted.

There were two eyewitnesses to the homicide, namely, the witness Benson, who testified upon behalf of the State, and the wife of the appellant. The State relied upon the witness Benson to reveal the incidents of the homicide. As related by that witness, the facts immediately preceding the homicide are these: Several months before the homicide, the appellant had expressed in Benson's presence an unfriendly feeling towards the deceased. On the morning of the day upon which the deceased was killed, he and the appellant and the witness Benson had been rabbit hunting and were on friendly terms. After the hunt, the deceased and Benson went to the home of Mrs. Twitty and the appellant went to his home. Benson and the deceased later returned to the home of the appellant, each with an axe, for the purpose of cutting timber, and to get the appellant to accompany and aid them. Upon reaching the home of the appellant, his wife was found in the yard feeding some young chickens. Deceased remarked to her that "it looked funny that she had black chickens like his." She claimed that the chickens belonged to her. Appellant interposed and said that he had not previously been charged with stealing chickens. Deceased laughed and turned to the woods, saying to appellant: "You get the axe and come and cut wood." Appellant said: "I am sick. I don't like you. What will you pay for the work I have done on my crop? I want to sell out to you."

Deceased said: "If you will see a Mexican and sell to a Mexican, it will be all right with me."

Appellant said: "All right; I don't like you; never did like you. You are a pretty rotten kind of a fellow."

Deceased then turned towards the appellant and said: "What's that?" He had his axe on his shoulder. Appellant arose from his sitting position, stepped back into the house, took hold of his gun which was sitting in the house and said to deceased: "Don't come in here." Deceased entered the house and advanced upon the appellant. He retreated and while doing so, kept his gun pointed at the deceased, who continued to follow until both parties had gone through the house, and just as they reached the outside, appellant fired and fled. Deceased continued to pursue him with his axe on his shoulder. The gun was charged with bird shot. The deceased died a few hours after receiving the wound.

Appellant closed his case without the introduction of evidence and insisted that on the conceded facts, it was apparent that the appellant acted in self-defense and that there should be no conviction.

The court, after hearing argument, overruled the request for an instructed verdict, and announced that he would charge upon the issue of provoking the difficulty and exhibited his charge embracing that issue. Appellant then asked the privilege of introducing the wife of the appellant who was present at the time of the homicide. According to the motion, her testimony would have been this: When deceased and Benson came to her home and inquired for her husband, she informed them that he was asleep. Deceased inquired where she had gotten the eight little chickens that were in the yard. Upon her reply that she had raised them, deceased said that this could not be true for the reason that her hens were red and the chickens were black; that he had lost nine eggs and that the eight chickens must be his. She told him that the chickens were from eggs from her hens. Deceased then called to the appellant, who came to the south door of the house and sat down. Deceased asked him where they had gotten the chickens and was informed that they belonged to the wife of the appellant and that she had raised them. Deceased then reiterated his statement that he did not see how they could have black chickens from red hens, and that the chickens must have come from his eggs. Appellant denied this and deceased told him that they must have stolen his eggs. Appellant replied that deceased was the first person for whom he had ever worked who had accused him of stealing eggs or chickens, and that if the deceased would buy him out, he would leave. Deceased said if appellant could get a Mexican or somebody to buy him out, he could leave. Appellant said that he had worked for many men but that he had never before been charged with stealing; that he would sell out because there was something rotten about it. Deceased told him not to go too far, and appellant said: "Well, there must be something rotten about your accusing me of stealing those chickens," whereupon deceased started towards the appellant, raised his axe and struck at him while on the step. He jumped back and told the deceased not to come but to go back. Deceased advanced into the house with the axe raised. Appellant backed into and through the room, and the deceased struck at him with the axe when they were about in the center of the room. She heard appellant tell the deceased not to enter the house, when the deceased replied that "he would go anywhere he was big enough to go." She also heard the appellant tell the deceased to leave the house.

When the motion was presented, the district attorney opposed it upon the ground that to meet the proposed testimony he would need the evidence of four witnesses whom he named. All of these witnesses except one were shown to be either in the courtroom or obtainable without delay. One of the witnesses named by the district attorney resided in McLennan County. She was not present at the homicide. The district attorney had talked to her about the

case and she had disclosed to him no knowledge of testimony contradictory or conflicting with that of the wife of the appellant.

The State, after the eyewitness Benson had described the tragedy, called Mrs. Twitty, who testified that she was a widow; that the deceased was her son; that upon hearing the gun fire, she ran from her home in the direction of the shooting and met her son, who exclaimed: "Mamma, run and get something to put on my arm." She was not cross-examined, but in the course of her direct examination, State's counsel addressed to her this question: Q. Shortly after dinner did you hear anything? A. I heard a gunshot. Q. What, if anything, did you do? A. I heard the scream, and I thought Will had shot his wife, because he had been drawing his gun on her."

Upon objection by counsel for appellant, the court said: "It is not responsive, it is a conclusion of the witness and not legitimate testimony, and the jury is instructed not to consider it."

Whether the prompt action of the court in withdrawing the testimony mentioned rendered it harmless cannot be determined. It put into the case the offense of assault by appellant on his wife and was discrediting to his character as a man of peace. His reputation for peace and quietude had not been put in issue, the application for a continuance to secure testimony on that subject from the county in which he had until recently resided having been denied. The improper testimony was certainly calculated to affect the jury, and is of a nature which cannot ordinarily be effectively withdrawn. Branch's Ann. Texas P. C., Secs. 383, and 385. The consequences following such testimony must be weighed in each case in the light of the entire record.

Our statute, Art. 718, C. C. P., reads thus: "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appear that it is necessary to a due administration of justice."

The reports of the opinions of this court portray many instances in which the action of the trial court in allowing the State to re-open the case after the evidence had been closed has been sanctioned. Vernon's Tex. Crim. Stat., Vol. 2, p. 396; Pool v. State, 51 Texas Crim. Rep., 596; Webb v. State, 69 Texas Crim. Rep., 413; Greenwood v. State, 74 Texas Crim. Rep., 455.

So, when the trial court has refused to the accused on trial the same privilege, this court has, on several occasions, reversed the judgment of conviction. White v. State, 150 S. W. Rep., 609; Mandosa v. State, 88 Texas Crim Rep., 84. The statute vests in the trial court a judicial discretion, reviewable only when abused, but when it appears that evidence should "in the due administration of justice" have been received, the discretion is not absolute.

In the present instance, we have discerned no good cause for rejecting the testimony. All the eyewitnesses were present. The

proffered testimony related only to the facts immediately attending the homicide. It does not appear that any delay of consequence would have resulted from the granting of the motion.

Whether the facts raised the issue of provoking the difficulty is upon the border line. Appellant insists that upon the State's evidence, there is nothing that would authorize the jury to determine that the appellant, in his language or by his acts, did anything reasonably calculated to provoke the deceased to attack him, or that the words used or acts done by him were with the intent to cause the deceased to make an attack to the end that it might be used as an excuse for shooting him. From the State's testimony, the deceased, at the beginning of the tragedy, in effect, charged the appellant's wife with theft. The appellant subsequently used language which brought about an attack by the deceased. Disregarding the warning to desist from coming into the house, deceased entered and pursued the appellant through his house, in the meantime having an axe in his possession. The State's attorney, in his brief, expresses the opinion that in instructing the jury upon the law of provoking the difficulty as a limitation upon the right of self-defense, the trial court was in error, citing Edwards v. State, 60 Texas Crim. Rep., 323, and other cases listed by Mr. Branch in his Ann. Tex. P. C., Sec. 1955. We are not prepared to say, however, that the evidence introduced by the State did not warrant the court in instructing the jury upon the issue mentioned. There was evidence that the appellant had previously given some expression of ill-feeling towards the deceased, and that there is testimony that after the discussion touching the chickens, the deceased started to leave the premises, when the appellant remarked: ''I don't like you; never did like you. You are a pretty rotten kind of a fellow.'' About the time that this remark was made, the appellant, according to the State's testimony, stepped into the house and grabbed his shotgun. The action of the deceased in attacking the appellant and going into the house with his axe in his possession followed the remarks mentioned, and considering the whole record, we have reached the conclusion that we are not warranted in stating, as a matter of law, that there was no issue of fact touching the intent of the appellant in using the words mentioned or as to their nature as bearing upon the provocation of the difficulty. In estimating the words and conduct of the parties, their relation to each other cannot be ignored, the fact that deceased was a white man and the appellant a negro must be held in mind. These relations, however, had bearing upon the entire case. The appellant, an untutored negro, a very few days after the homicide, was tried in the county in which the offense had taken place before a jury of white men. The widowed mother of the deceased, while testifying as a witness volunteered the statement

that the appellant had previously drawn a gun upon his wife and that she supposed, when she heard the shot fire, that he had killed her.

The verdict condemns the appellant to imprisonment for ninety-nine years, notwithstanding the fact that, according to the State's witness, the killing took place at his home after he had been charged by innuendo at least that he and his wife were in possession of chickens coming from eggs which had been stolen from the deceased. Before the deceased entered the house, he was warned by the appellant not to enter therein. Deceased had an axe in his possession. He pursued and the appellant retreated until he had gone entirely through his dwelling, and shot the deceased when they were very close together. Considered in the light of the record, we are of the opinion that the due administration of justice demanded that the appellant be accorded the privilege of putting before the jury the testimony of his wife, which he offered and the trial judge was not warranted in denying this privilege. White v. State, 67 Texas Crim. Rep., 572, 150 S. W. Rep., 609; Mandosa v. State, 88 Texas Crim. Rep., 84, 225 S. W. Rep., 169. Her testimony would put the tragedy in a light much more favorable to the appellant than did that of the State. Particularly is this true with reference to the issue of provoking the difficulty.

A very careful review of the record and the various assignments made leads us to the conclusion that on account of the matters stated, the trial court should have set aside the verdict and granted appellant a new trial. Because of his failure to do so, the judgment is reversed and the cause remanded.

*Reversed and remanded.*