**Rosana and Robert Dale PEEK, Appellants,**

v.

**The STATE of Texas.**

Nos. 2377–01, 2378–01.

Court of Criminal Appeals of Texas.

May 21, 2003.

John H. Hagler, Dallas, for Appellant.

Susan Hawk, Asst. DA, Dallas, Matthew Paul, State's Atty., Austin, for State.

### OPINION

KEASLER, J., delivered the opinion of the Court joined by KELLER, P.J., and MEYERS, PRICE, WOMACK, JOHNSON, HERVEY, and COCHRAN, JJ.

Rosana and Robert Dale Peek were tried together for injuring their daughter. After both sides closed, the defense sought to reopen the case. The judge denied the request. The appellate court

found no error because the Peeks did not demonstrate that "the evidence would have materially changed the case." The Peeks contest the appellate court's use of the "material change" analysis. We conclude that this is the appropriate analysis.

## I.

The Peeks were accused of injuring their 4–month–old baby Serena by grabbing her and squeezing her. The evidence at trial showed that in the fall of 1996, Rosana and Serena were in Baytown staying with Rosana's parents. While there, Rosana took Serena to a hospital because she had a fever and a sore in her mouth. Upon their return to Mesquite, Serena was still not better, so the Peeks took her to Presbyterian Hospital the next day. She was transferred to the Children's Medical Center because child abuse was suspected. Serena had rib fractures, bruises on her jaw, a torn upper frenum (the tissue connecting the upper gum to the lip), a torn lingual frenum (the tissue connecting the tongue to the floor of the mouth), a torn lower gum, a bruise below her right nipple, bruises behind her left elbow and below her knees, abrasions on her nose, and a scratch below her ear. The Peeks denied intending to hurt or actually hurting Serena and suggested the injuries had occurred at the Baytown hospital or beforehand while Serena was with her grandparents.

Both parties rested on Friday, January 14, 2000. At the next session, on Tuesday January 18, the defense sought to reopen the case to introduce medical records from the Baytown hospital. The motion was made and denied in chambers that morning. Later in the afternoon, the judge memorialized the event for the record:

THE COURT:—you made a motion to reopen. We discussed this first thing this morning when I arrived. We discussed it in chambers. I denied the motion. I told you we would put this on the record at a later date.

But if I recall correctly, you wanted to reopen to introduce some medical records from Baytown. Not x-rays but the medical records on file.

DEFENSE COUNSEL: The medical records themselves, Your Honor. Yes.

THE COURT: [The prosecutor] had an objection. I then asked [the prosecutor], if I allowed you to reopen and introduce the records, I asked whether or not she would have any rebuttal witnesses.

[Prosecutor], you told me that, in all probability, you would recall Dr. Persaud to explain the statement in the medical records concerning a clear chest.

PROSECUTOR: Yes, Your Honor.

THE COURT: Or whatever it said.

PROSECUTOR: Yes, sir.

THE COURT: The Court is of the opinion that it would be an unreasonable delay.

First, [defense counsel], did I state your motion appropriately?

DEFENSE COUNSEL: Yes, sir, you did.

THE COURT: Is there anything else you want to put on the record?

DEFENSE COUNSEL: Nothing further, Your Honor.

THE COURT: No one disputes the trip to the hospital in Baytown. The medical records don't reference the broken ribs. So, I don't really believe that the medical records are relevant.

In essence, the medical records would just bolster the testimony concerning the hospital trip, and that's undisputed. It doesn't shed any light on whether or not the Defendants committed the offense charged. If I allow the defense to reopen, the State certainly should be

allowed to call rebuttal witnesses. That will cause a delay. The Court believes it's an unreasonable delay under the circumstances.

So, I am denying—I did previously deny your motion, and I want to put on the record the official denial.

DEFENSE COUNSEL: If I may have my exception noted, Your Honor.

THE COURT: Noted.

During closing arguments, the defense argued that Serena's injuries occurred either while she was at the Baytown hospital or while she was with her grandparents beforehand. Defense counsel contended that the Peeks took Serena to Presbyterian Hospital "because of some question regarding the treatment there in Houston. But you heard the testimony regarding the x-ray report, that the child had a negative thoracic cavity, negative bony thoracic cavity. You heard that testimony." Counsel also reminded the jury of Rosana's testimony "that the child, while at her side, was attended by a physician in Houston, and he grabbed the child to try to do something with the blisters in the child's mouth."

The prosecutor responded:

And I want to comment about that, the Baytown hospital. We have to prove our case beyond a reasonable doubt, but they can bring any witness in here to testify. They can admit any kind of evidence that is favorable to their defense. So, where are the medical records from Baytown? Where are they? Where is the doctor that saw that child in Baytown? Because Rosana wanted to blame the doctor for the injuries. I mean, that's just absurd. No doctor at a hospital is going to force a child enough on their face to cause bruises.

It's easy to come in here and say that, but where is that doctor? Where are those medical records?

The jury convicted both of the Peeks, and the trial judge sentenced Robert to 15 years in prison and Rosana to one year in a state jail.

The Peeks filed a motion for new trial arguing that they had received ineffective assistance of counsel. They claimed their lawyer failed to introduce medical records from the Baytown hospital and other hospitals as well. The motion asserted that the Baytown records "would have established the physical and medical condition of the child and were exculpatory in nature."

At the hearing on the motion for new trial, the Peeks introduced all the medical records into evidence. The Baytown records contained the following comments, which the defense emphasized during the hearing:

- an oral ulcer on Serena at the time of her admission;
- "inflammation of lower gums"; and
- "Two views of the chest demonstrate the heart size to be normal. The peripheral lungs are clear. The bony thorax is intact. Conclusive, negative chest."

Defense counsel argued that the records demonstrated that Serena had pre-existing injuries and showed that the Peeks were not guilty. Though he did not elaborate, the trial record indicates that the defense would have used these records to show that Serena's chest injuries had occurred during her stay at the Baytown hospital and her mouth injuries had occurred during her time with her grandparents before she was admitted to Baytown.

The judge denied the motion for new trial and the Peeks appealed. They argued, among other things, that the judge erred in refusing to allow them to reopen their case to introduce the Baytown rec-

ords. The Court of Appeals disagreed. It stated that "[i]f the defendant seeks to reopen, there is abuse of discretion only if the evidence would have materially changed the case in the defendant's favor."[1] It concluded that the medical records "probably would not have materially changed the result in [the Peeks'] favor."[2]

The Peeks petitioned for discretionary review, arguing that the "material change" test is "contrary to the standard set out in numerous decisions of this Court."[3] Our courts of appeals are split on whether a party seeking to reopen must demonstrate that the evidence would "materially change the case" in his favor in order to show error.[4] We granted review to resolve this conflict.

## II.

■■■ We construe statutes according to their plain language.[5] If that language is ambiguous or leads to an absurd result which the legislature could not possibly have intended, we may then review extratextual factors.[6]

Article 36.02 governs a party's right to reopen a case. It provides that the trial court "shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice."[7] Nothing in the statute's plain language mentions anything about a "material change." But that phrase could conceivably (and has, as we shall see) come within the concept of evidence being "necessary to a due administration of justice." The real question, then, is what is meant in the statute by "a due administration of justice."

Article 36.02 has existed under various incarnations since 1856.[8] Its wording has remained unchanged, but our interpretation of that wording has varied over the years.

Criminal cases were originally appealed to the Texas Supreme Court. In one of the first cases to address the statute, *Harris v. State*,[9] that Court found that the proffered evidence was not "necessary to a due administration of justice" because there was "no reason to believe that the

1. *Rosana Peek v. State*, No. 08–00–00157–CR, slip op. at 17–18, 2001 WL 1169924 (Tex. App.-El Paso Oct.4, 2001); *Robert Peek v. State*, No. 08–00–00158–CR, slip op. at 18–19, 2001 WL 1169922 (Tex.App.-El Paso Oct.4, 2001).

2. *Rosana Peek*, slip op. at 19; *Robert Peek*, slip op. at 20.

3. *See Vital v. State*, 523 S.W.2d 662, 664–65 (Tex.Crim.App.1975); *Rogers v. State*, 774 S.W.2d 247, 263 (Tex.Crim.App.1989); *Cain v. State*, 666 S.W.2d 109, 111 (Tex.Crim.App. 1984); *Holifield v. State*, 599 S.W.2d 836, 837 (Tex.Crim.App.1980); *Tucker v. State*, 578 S.W.2d 409, 410 (Tex.Crim.App.1979).

4. *Compare Gray v. State*, 797 S.W.2d 157, 160 (Tex.App.-Houston [14th Dist.] 1990, no pet.) (requiring showing of material change); *Whiting v. State*, 755 S.W.2d 936, 941 (Tex. App.-San Antonio 1988) (same), *rev'd on other

grounds*, 797 S.W.2d 45 (Tex.Crim.App.1990); *Zayas v. State*, 972 S.W.2d 779, 792 (Tex.App.-Corpus Christi 1998, pet. ref'd) (same); *Watkins v. State*, 880 S.W.2d 16, 18 (Tex.App.-Tyler 1993, pet. ref'd) (same); *with Forbes v. State*, 976 S.W.2d 749, 752 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (rejecting material change standard).

5. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

6. *Id.*

7. Tex.Code Crim. Proc. Art. 36.02.

8. Former Art. 643 (1925); former Art. 718 (1920); former Art. 698 (1895); former Art. 661 (1879); former Art. 581 (1856). See also former Art. 3046, Paschal's Digest.

9. 44 Tex. 146, 147 (1875).

evidence so offered ... was of a character to materially change the state of the case favorably for the defendant...." So when the Supreme Court was reviewing criminal cases, a "due administration of justice" encompassed the notion of "material change."

Shortly after *Harris* was decided, the Supreme Court stopped reviewing criminal cases. From 1876 to 1892, criminal cases were reviewed by the Texas Court of Appeals, the predecessor to this Court. In 1877 the Court of Appeals decided *Treadway v. State*,[10] in which the Court followed the Supreme Court's *Harris* opinion and stated that the trial judge did not err in refusing to allow the defendant to reopen his case because "there [wa]s no reason to believe that the evidence so proposed to be offered was of a character to materially change the state of the case favorably for the defendant." And in 1881, the Court of Appeals found that the due administration of justice required the admission of evidence because it "was material."[11]

But that same year, in *Hewitt v. State*,[12] the Court considered the evidence's materiality as only one factor among several others to be considered in determining whether the due administration of justice warranted its admission. The Court also found relevant that (a) the State was informed of the defense witness and was aware that she was ill and would testify the following day after both sides closed; (b) "[t]here was not the slightest circumstance indicating a disposition on the part of counsel for the defendant to impede the progress of the trial or trifle with the court"; and (c) a fair trial means that

"every opportunity should be, and is by the law, extended the citizen to meet the charge made against him."[13]

These other factors took precedence in a few of the cases that followed. In *Cook v. State*,[14] the Court stated that since there was nothing in the record showing that the defendant was trying to delay the proceedings or "trifle with the court[,] ... a due administration of justice require[d] reception of the proffered evidence." And in *Bostick v. State*,[15] the Court indicated that as long as the evidence was "legitimate" and "important to the defendant," it should be admitted. So the Court of Appeals' stance on the meaning of "due administration of justice" was less clear than the Supreme Court's. While the Court of Appeals appeared to require that the evidence "materially change the state of the case," it did not consistently apply this standard, sometimes holding instead that the evidence should be admitted as long as it was important to the proponent and the proponent was not trying to delay the proceedings.

In 1892, the Court of Appeals became the Court of Criminal Appeals. Under that name, we soon got more opportunities to address the statute's "due administration of justice" language. During the first era of our review, from 1892 until about 1912, our case law was not always consistent. Several cases continued with the Court of Appeals' most recent trend and interpreted "due administration of justice" as requiring much less than a "material change." In *Burt v. State*,[16] we indicated that a "due administration of justice" re-

10. 1 Tex. Ct.App. 668, 671 (1877).

11. *Cohea v. State*, 11 Tex. Ct.App. 153, 157 (1881).

12. 10 Tex. Ct.App. 501 (1881).

13. *Id.* at 506–07.

14. 11 Tex. Ct.App. 19, 21 (1881).

15. 11 Tex. Ct.App. 126, 132 (1881).

16. 38 Tex.Crim. 397, 40 S.W. 1000 (1897).

quired the admission of evidence that was "relevant" and "tend[ed] to shed light on the main fact in issue." In *Dodson v. State*,[17] we held that the trial judge should have permitted the State to reopen its case to prove the date of the offense. We indicated that this evidence satisfied the "due administration of justice" requirement because it "seem[ed] to have been overlooked while taking the evidence in the case."[18] And in *Montgomery v. State*,[19] we found that the trial judge should have admitted evidence that "would aid the jury." Under these cases, evidence was "necessary to a due administration of justice" if it was relevant, could shed light on the case, had been overlooked previously, or would aid the jury.

Many other cases, on the other hand, mentioned materiality[20] and prejudice[21] as part of the analysis. We seemed to be struggling to make some sense out of the case law from the Supreme Court and the Court of Appeals.

But by the 1920's and 1930's, we began to develop a more consistent approach and nearly always encompassed the notion of materiality[22] or prejudice[23] into the analysis. In particular, we specifically revived the "material change" standard, stating that the trial court did not abuse its discretion in failing to reopen the case if there was "no reason to believe that the evidence proposed to be offered was of a character to materially change the state of the case favorably for the accused."[24] Nevertheless, we also retained our earlier belief that the evidence should be admitted if it would not impede the trial or interfere with the due administration of justice.[25]

But after Art. 36.02 was enacted in 1965, we suddenly dropped the "material change" analysis. In *Vital v. State*,[26] we held that, "[1] irrespective of its weight, or of its probative value or cumulative character, or the issue upon which it is offered, ... if the evidence was admissible and [2]

17. 35 Tex.Crim. 571, 34 S.W. 754 (1896).

18. *Id.* at 572, 34 S.W. at 754.

19. 68 Tex.Crim. 78, 83, 151 S.W. 813, 815 (1912).

20. *Reynolds v. State*, 71 Tex.Crim. 454, 458, 160 S.W. 362, 365 (1913); *White v. State*, 67 Tex.Crim. 572, 573, 150 S.W. 609, 609 (1912); *Mancha v. State*, 57 Tex.Crim. 332, 335, 123 S.W. 129, 130 (1909); *Dement v. State*, 39 Tex.Crim. 271, 278, 45 S.W. 917, 918 (1898).

21. *Bailey v. State*, 63 Tex.Crim. 584, 590, 141 S.W. 224, 227 (1911); *Elsworth v. State*, 52 Tex.Crim. 1, 6, 104 S.W. 903, 906 (1907).

22. *Davidson v. State*, 162 Tex.Crim. 640, 649, 288 S.W.2d 93, 99 (1956); *Meeks v. State*, 135 Tex.Crim. 170, 173, 117 S.W.2d 454, 456 (1938); *Slone v. State*, 118 Tex.Crim. 649, 651, 37 S.W.2d 1019, 1020 (1931); *Davis v. State*, 115 Tex.Crim. 641, 643, 27 S.W.2d 818, 819 (1930); *Hillman v. State*, 103 Tex.Crim. 603, 605, 281 S.W. 874, 875 (1926) (evidence would have had "direct bearing" on issue).

23. *Gobella v. State*, 116 Tex.Crim. 298, 299, 31 S.W.2d 643, 643 (1930); *Roberts v. State*, 97 Tex.Crim. 288, 294, 260 S.W. 875, 878 (1924) (evidence would have put case "in a light much more favorable to the appellant").

24. *Heidingsfelder v. State*, 128 Tex.Crim. 351, 364, 81 S.W.2d 510, 517 (1935). *See also Ewalt v. State*, 363 S.W.2d 279, 283–84 (Tex. Crim.App.1963); *Waldrip v. State*, 130 Tex. Crim. 205, 207, 93 S.W.2d 414, 415 (1936); *Baker v. State*, 130 Tex.Crim. 649, 653, 95 S.W.2d 401, 403 (1936); *Crawford v. State*, 105 Tex.Crim. 281, 284, 288 S.W. 213, 214 (1926) (whether rejected testimony "would appear likely to lead to a decision favorable to the accused upon some disputed issue").

25. *Davidson v. State*, 162 Tex.Crim. at 650, 288 S.W.2d at 99; *Stanley v. State*, 138 Tex. Crim. 486, 490, 137 S.W.2d 34, 36 (1940); *Slone*, 118 Tex.Crim. at 651, 37 S.W.2d at 1020; *Meeks*, 135 Tex.Crim. at 174, 117 S.W.2d at 456.

26. 523 S.W.2d at 664–65.

offered before the reading of the charge and prior to arguments, [3] unless it appears its introduction would have impeded the trial or interfered with the due and orderly administration of justice, it will be reversible error to refuse the request to reopen for its receipt." [27]

In *Vital*, we seemed to ignore the direction the case law had been heading for the previous fifty years. With part (1), we required the evidence to be admissible but not material. This reflected a return to the turn-of-the-century days of *Burt*[28] and *Montgomery*,[29] when a "due administration of justice" required the admission of evidence that was merely "relevant" and "would aid the jury." With part (2), we slightly revised the statutory language, requiring for the first time that the evidence be offered "prior to arguments," even though the statute itself permits evidence to be admitted after arguments have begun, as long as the arguments have not yet concluded. And in part (3), we retained our concern that the evidence should not be admitted if it would impede the progress of the trial.

With this new test, the "material change" standard was dropped in favor of a much more lenient standard which required a judge to reopen the case as long as the evidence was admissible, "irrespective of its weight, or of its probative value or cumulative character." If that standard were met, we indicated that it was automatic "reversible error" for the judge to refuse to reopen.

■ The phrase "due administration of justice" is inherently vague. Given the many ways that we have interpreted the phrase over the years, we find it to be ambiguous. We therefore proceed to a consideration of extra-textual factors. Because the statute was enacted so long ago, we have no legislative records to give us any insight into the Legislature's intent. But we can consider the circumstances under which the statute was enacted and the consequences of particular constructions.

### Circumstances Under Which Statute was Enacted

The Texas Supreme Court acknowledged over a century ago that the purpose of the statute was to change "the rigid rule" of the past.[30] The Court did not explain what that "rigid rule" was, but a review of the case law of the time reflects that before this statute was enacted, a party could not reopen his case to admit additional evidence unless that evidence was in rebuttal. In several early cases, defendants complained that the evidence the State had been permitted to admit after both sides had closed was not rebuttal evidence. The Court repeatedly rejected these claims, recognizing that under the new statute, courts were not limited to admitting rebuttal evidence only.[31] Instead, judges were permitted to admit evidence of any kind. So the statute rejected the "rigid rule" of the past and operated to allow more evidence to be admitted at trial. It sought to give trial judges greater discretion in determining whether it

---

27. *Id. See also Rogers v. State*, 774 S.W.2d at 263; *Cain*, 666 S.W.2d at 111; *Lackey v. State*, 638 S.W.2d 439, 458 (Tex.Crim.App. 1982); *Holifield*, 599 S.W.2d at 837; *Tucker*, 578 S.W.2d at 410.

28. 38 Tex.Crim. at 397, 40 S.W. at 1000.

29. 68 Tex.Crim. at 83, 151 S.W. at 815.

30. *Kemp v. State*, 38 Tex. 110, 111 (1873).

31. *Davis v. State*, 115 Tex.Crim. at 644, 27 S.W.2d at 819; *Laurence v. State*, 31 Tex. Crim. 601, 603, 21 S.W. 766, 767 (1893); *Hendricks v. State*, 28 Tex. Ct.App. 416, 417, 13 S.W. 672, 672 (1890).

was appropriate to reopen a case to admit additional evidence.

### Consequences of a Particular Construction

The consequences of the different possible interpretations of "due administration of justice" are perhaps the most telling factor which we consider.

Our opinion in *Vital*, interpreting "due administration of justice" to mean little more than relevance, sets forth an extraordinarily low standard. Under this interpretation, virtually any evidence that a proponent could present must be admitted. The trial court loses discretion to analyze the materiality of the evidence because every piece of relevant evidence must be admitted. Since "relevant" is defined very broadly [32] the trial court will nearly always err whenever it excludes evidence. This lack of discretion contradicts the statute's intent in granting judges greater discretion. And since the Rules of Evidence already require that evidence be relevant,[33] this standard essentially removes all meaning from the phrase "due administration of justice."

In contrast, a return to the *Harris* requirement of material change sets forth a higher standard. "Due administration of justice" requires a showing that the evidence is more than just relevant—it must actually make a difference in the case. With "due administration of justice" meaning something more than mere relevance, meaning is returned to that phrase. Under this interpretation, litigants are encouraged to introduce their evidence during the course of the trial rather than waiting until closing arguments. And although this interpretation naturally results in less evidence coming in, it ensures that material evidence will not be overlooked.

### III.

■ A trial judge is required to reopen a case under Art. 36.02 only if the proffered evidence is "necessary to a due administration of justice." Given the direction of our case law over the years, the statute's purpose in granting judges greater discretion, and the consequences of each construction, we conclude that a "due administration of justice" means a judge should reopen the case if the evidence would materially change the case in the proponent's favor. We overrule any cases to the contrary.[34] The Court of Appeals properly applied the materiality standard to this case, and the Peeks do not challenge the appellate court's conclusion that this evidence was not material.

Since there is no reason to reach ground three, it is dismissed. We affirm the Court of Appeals' judgment.

HOLCOMB, J., filed a dissenting opinion.

HOLCOMB, J., filed a dissenting opinion.

Texas Code of Criminal Procedure article 36.02, enacted into law in 1965, provides: "The [trial] court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." The meaning of that statutory language has been settled for many years, at least since our holding in *Vital v. State*, 523 S.W.2d 662 (Tex.

---

**32.** TEX.R. EVID. 401; *Mayes v. State*, 816 S.W.2d 79, 84 (Tex.Crim.App.1991).

**33.** TEX.R. EVID. 402.

**34.** *See Vital*, 523 S.W.2d at 664–65; *Rogers*, 774 S.W.2d at 263; *Cain*, 666 S.W.2d at 111; *Holifield*, 599 S.W.2d at 837; *Tucker*, 578 S.W.2d at 410.

Crim.App.1975). In that case, we held that under the statute, a trial court must reopen a case and admit a party's offered evidence "irrespective of its weight, or of the probative value or cumulative character or the issue upon which it is offered ... if the evidence [is] admissible and offered before the reading of the charge and prior to arguments, unless it appears its introduction would ... imped[e] the trial or interfer[e] with the due and orderly administration of justice." *Id.* at 664–665. For four separate reasons, I conclude that we should adhere to the *Vital* interpretation of the statute. First, that interpretation is consistent with the statutory text and with the pursuit of truth, which is what a criminal trial is all about. Second, we re-affirmed the *Vital* interpretation in *six* subsequent cases. See *Tucker v. State,* 578 S.W.2d 409, 410 (Tex.Crim.App.1979); *Scott v. State,* 597 S.W.2d 755, 757 (Tex.Crim.App.1979); *Holifield v. State,* 599 S.W.2d 836, 837 (Tex.Crim.App. 1980); *Lackey v. State,* 638 S.W.2d 439, 458 (Tex.Crim.App.1982); *Cain v. State,* 666 S.W.2d 109, 111 (Tex.Crim.App.1984); and *Rogers v. State,* 774 S.W.2d 247, 263 (Tex.Crim.App.1989). Changing our minds now, after all these many years, makes us look foolish and result-oriented. Third, the Legislature has not found it necessary to overrule the *Vital* interpretation of the statute legislatively, which should give us considerable confidence that the interpretation is correct. See *State v. Hall,* 829 S.W.2d 184, 187 (Tex.Crim.App. 1992) (prolonged legislative silence following judicial interpretation of statute implies approval of judicial interpretation). Finally, the reasons given by the majority today for overruling *Vital* and its progeny and re-interpreting Article 36.02 are not very persuasive, certainly not compelling.

In his dissent in *Garrett v. State,* 851 S.W.2d 853 (Tex.Crim.App.1993), Judge Campbell reminded us that the proper administration of justice requires that we adhere to our precedents absent compelling reasons for doing otherwise. His words bear repeating today:

> The traditional rule requiring respect for precedent, usually referred to as the rule of *stare decisis* ("let the prior decision stand"), has at least four rationales. First, if courts adhere to past decisions, direction is provided to all who labor in the legal enterprise. Lower courts know how they should and should not decide cases; lawyers know how to frame their arguments, devise their strategies, and advise their clients in accord with the lessons of past cases; the Legislature and Governor know what they may and may not do, and so forth. "[S]tare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right." *Burnet v. Coronado Oil and Gas Co.,* 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting). Second, the labor of judges would be increased to the breaking point if every past decision could be reopened in every case. Third, "the very concept of the rule of law ... requires such continuity over time that a respect for precedent is, by definition, indispensable." *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992). Fourth, the continuity of the law helps preserve public faith in the judiciary as a source of impersonal and reasoned judgments.

Of course, as every first-year law student knows, the rule of *stare decisis* is not an inexorable command. Courts must be free, at certain times, to overrule their past decisions. But we have recognized that the rule of *stare decisis* "creates a strong presumption in favor of established law." *Collier v. Poe,* 732

S.W.2d 332, 345 (Tex.Cr.App.1987). We have also recognized that the rule "has its greatest force in the area of statutory construction," *id.*, because if the construction of a statute is unacceptable to the Legislature, a simple remedy is available by the process of legislative amendment. *State v. Hall,* 829 S.W.2d 184, 187 (Tex.Cr.App.1992); *Lockhart v. State,* 150 Tex.Crim. 230, 200 S.W.2d 164, 167–168 (Tex.Cr.App.1947); accord, *James v. Vernon Calhoun Packing Co.,* 498 S.W.2d 160, 162 (Tex.1973); *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 186 (Tex.1968); *Moss v. Gibbs,* 370 S.W.2d 452, 458 (Tex.1963). In agreement with this position, the United States Supreme Court recently stated:

> [T]he burden borne by the party advocating the abandonment of an established precedent is greater where the Court is asked to overrule a point of statutory construction. Considerations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done.

*Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989).

When may a precedent be properly overruled? This is a difficult question to answer, but we may be confident in the assumption that a precedent may not properly be overruled simply because a majority of the Court believes it to be error. If the rule were otherwise, then no precedent would be safe and our law could change after every change in Court personnel. "The situation would ... be intolerable if the [periodic] changes in the composition of the court were accompanied by changes in its rul-

ings. In such circumstances there is nothing to do except to stand by the errors of our brethren of the [time] before, whether we relish them or not." B. Cardozo, *The Nature of the Judicial Process* 150 (1921).

In my view, when a court contemplates overruling an established precedent, especially a prior statutory interpretation which has been left undisturbed by the Legislature, the court must carefully balance the reasons proffered for rejecting the precedent against the very weighty considerations—discussed previously— underlying *stare decisis.* Such an analysis will preclude rejection of precedent absent the strongest reasons for doing so.

*Garrett v. State,* 851 S.W.2d at 862–863 (Campbell, J., dissenting).

I would reverse the judgments of the court of appeals and remand the cases to that court so that it may address appellants' claims in a manner consistent with our holding in *Vital* and its progeny. Because the majority refuses to do so, I respectfully dissent.