## E. L. BARBEE V. THE STATE.

### No. 71. Decided November, 1909.

### Rehearing granted January 26, 1910.

**1.—Murder—Evidence—Cross-Examination—Conversation.**

Upon trial for murder there was no error in permitting the State on cross-examination of defendant's wife, who had testified to an insult offered her by the deceased, to ask her what her husband said when she told him of this insult, and what questions he asked her; this being part of a conversation introduced by the defense.

**2.—Same—Evidence—Contradicting Witness.**

Where upon trial tor murder the wife of the defendant had testified to certain insulting conduct offered her by the deceased, there was no error in permitting the State on cross-examination of one of defendant's witnesses to show that defendant's wife had not resented said alleged insults if they were offered.

**3.—Same—Evidence—Carrying Deadly Weapon—Motive.**

Where upon trial for murder there was testimony that defendant was looking for deceased, with reference to some trouble which the latter had with defendant's son, and that defendant was angry, etc., there was no error to admit testimony to show that at that time he carried a pistol; besides that fact appeared by other testimony.

**4.—Same—Evidence—Insult to Female Relative.**

Upon trial for murder where the defense claimed insulting conduct by the deceased towards defendant's wife, there was no error in admitting testimony that after said alleged insult there was no difference in relations between the deceased and defendant's wife.

**5.—Same—Evidence—Bill of Exceptions—Cross-Examination.**

While it is admissible to interrogate a witness as to his testimony on a former trial, and to lay a predicate to contradict him, etc., yet where on appeal from a conviction of murder in the second degree the bill of exceptions did not disclose what the witness would have answered to the question propounded about his testimony on a former trial, the same could not be considered.

**6.—Same—Evidence—Acts of Deceased.**

Upon trial for murder where the evidence for the State showed, that the deceased, having been shot down by the defendant, immediately fell with his body partly under the hind end of the wagon, and very soon died without speaking a word, there was no error in excluding testimony as to what impression a certain movement of the deceased with his hand made on the witness, as at that time defendant could not have acted on anything the deceased was doing.

**7.—Same—Self-Defense—Charge of Court—Manslaughter.**

Where upon trial for murder the court's charge required the jury to believe not only the affirmative of the issue of insulting conduct towards the defendant's wife, but required them further to find that the deceased had used violent language to and threatened defendant with bodily harm, before they could reduce the offense to manslaughter, the same was reversible error.

**8.—Same—Charge of Court—Blending Issues—Adequate Cause.**

Where, in a trial of murder, any one or more issues are raised by the evidence, either of which if found to be true would as a fact constitute adequate cause the jury should be so instructed, and it is error to blend the two and require that the affirmative of both issues must be found before the offense can be reduced to manslaughter. Following Hightower v. State, 53 Texas Crim. Rep., 486, and other cases.

**9.—Same—Charge of Court—Conflict—Adequate Cause—Case Stated.**

Where upon trial for murder there was evidence of insulting conduct by the deceased towards defendant's wife, and also violent language and threatened injury by the deceased towards the defendant, and the court in instructing upon these issues submitted charges thereon which were in conflict with each other, and required the jury to find affirmatively · upon both of these issues before they could reduce the offense to manslaughter, the same was reversible error.

Appeal from the District Court of Grayson.   Tried below before the Hon. B. L. Jones.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Head, Dillard, Smith & Head,* and *Wolfe, Hare & Maxey,* for appellant.—On question of permitting cross-examination of defendant's wife as to what defendant said to her after she advised him of the insult to her by the deceased: Jones v. State, 40 S. W. Rep., 807; Jones v. State, 41 S. W. Rep., 638; Hoover v. State, 35 Texas Crim. Rep., 342, 33 S. W. Rep., 337; Bluman v. State, 33 Texas Crim. Rep., 43, 26 S. W. Rep., 75; Gaines v. State, 38 Texas Crim. Rep., 202; Merrit v. State, 39 Texas Crim. Rep., 70.

Upon question of admitting testimony of defendant's son to the effect that his mother did not object to his associations with the deceased: Roberts v. State, 47 S. W. Rep., 358.

Upon question of admitting testimony of defendant's son without laying predicate to impeach his mother:   2 Russell on Crimes, 633; 1 Greenleaf, sec. 462; People v. Chin Hane et al., 41 Pac. Rep., 697.

Upon question of admitting testimony of defendant's possession of a pistol:   Guajardo v. State, 24 Texas Crim. App., 603.

On question of rejecting testimony as to movements of deceased after being shot: Swinney v. Booth, 28 Texas, 114.

On question as to court's charge on manslaughter:   Hightower v. State, 53 Texas Crim. Rep., 486, 110 S. W. Rep., 750; Casey·v. State, 54 Texas Crim. Rep., 584, 113 S. W. Rep., 535; Bays v. State, 50 Texas Crim. Rep., 548, 99 S. W. Rep., 561.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, Judge.—This is the second appeal of this case.   The former opinion will be found in 50 Texas Crim. Rep., 426, 97 S. W. Rep., 1058.   Upon this conviction appellant's punishment was assessed at five years confinement in the penitentiary for murder in the second degree.

We glean from appellant's brief the following as the uncontradicted evidence upon the trial:

"The uncontroverted evidence upon the trial shows that about noon on the 6th day of March, 1905, on the public square in Sherman, Texas,

appellant shot deceased one time with a pistol and killed him; that at the time of the shooting deceased was standing near the rear end of a wagon; that immediately after the shot he fell with his body partly under the hind end of the wagon, and that very soon after he fell he died without speaking or saying anything after he was shot. That the day of the homicide was stray sale day, and that a large number of people were at the time of the homicide in close proximity to the scene of the shooting, conversing, trading horses and standing around. Deceased and appellant had been acquainted for several years, and at one time deceased had worked for appellant on his farm. In the latter part of the summer of 1904, appellant with his family moved from a farm near Howe, Texas, to a farm near Southmayd, Texas. At the time of moving appellant's crop had not been fully gathered and he left deceased and his son Frank on the farm at Howe to look after and gather the crop. Just before Frank Barbee left the farm at Howe he sent a package of laundry from Howe to Sherman to be laundered, and when he left there to join his parents at Southmayd the laundry had not returned. Frank gave deceased the necessary money to pay for the laundry, requesting deceased to receive it and keep it until he (Frank) should call for it at some time. On Sunday before the homicide on Monday Frank Barbee attended church near Howe and deceased also attended that church. After service Frank told deceased that he would go up home with him and get his laundry and deceased said all right. Deceased, his cousin and brother-in-law left the church together in a buggy and were overtaken near the place where deceased lived by Frank Barbee. When Frank came up to the buggy it was stopped and Jenkins had gotten out. Frank asked deceased if he was going on with him after the laundry; deceased said no; that appellant owed him some money, and he was not going to give Frank his laundry until he got his money. Frank told deceased that he (Frank) didn't owe deceased anything and that he would have to look to his father for his money; if his father owed him anything he would pay it, and that deceased ought not to hold the laundry for something somebody else owed him. Deceased said that appellant had to pay him that money; that appellant couldn't beat him out of anything and that Frank couldn't have the laundry until he got the money unless he rode over his dead body. Deceased said to Frank: 'You tell the old man if he says he don't owe me that he is a damned old lying son-of-a-bitch.' That deceased seemed out of humor and had an open knife in his hands. On that evening, after returning home a short time before night, Frank told appellant the incident of his meeting and conversation with deceased. In July, 1904, while deceased was working at appellant's house and while the members of the family were away from the house deceased went to appellant's house and made an insulting and indecent proposal to appellant's wife. Appellant's wife told deceased that she would tell her husband. Deceased told appellant's wife that if she told her husband and her husband came on to him that he

would kill her husband; and after some parleying and insisting on the part of deceased that appellant's wife say nothing about the matter, deceased left the house and nothing was said about the matter by appellant's wife at that time to anybody, but deceased told one Henry Rankin of the incident that occurred between him and appellant's wife. On Sunday night before the homicide on Monday appellant's wife told appellant of the insult that had been offered to her by deceased. On the morning of the homicide deceased asked Joel Collins, a trader, to buy a couple of mules that he (deceased) had for sale. Collins told the deceased that he did not want the mules and suggested that deceased sell them to appellant. Deceased replied that he would not sell appellant anything; that he would rather cut his (Barbee's) paunch out than to sell him the mules. The occasion of the homicide was the first meeting between appellant and deceased on the day of the homicide; at the time of the homicide deceased had in his pocket two pocket knives. Immediately after the shooting appellant stated that deceased was coming at him with a knife.

"The controverted facts are that the State showed that before the homicide appellant inquired for deceased, stating he had a settlement to make with him, and that appellant had said that he never had been as mad in his life as he was either the evening before or the night before; at the time of the homicide it was claimed by appellant that he approached deceased and asked him why he treated his wife the way he did; that deceased drew a knife and said he would cut appellant's damned paunch out, and was advancing toward him when appellant shot; and in this connection appellant is corroborated; while it was claimed by the State that at the time the fatal shot was fired that deceased was standing with his hands by his side doing and saying nothing."

1. Appellant complains the court erred in admitting the evidence of defendant's wife as shown by bill of exceptions No. 1. Mrs. Barbee testified by deposition in chief that on the night before the killing in March, while they were thrashing oats at defendant's, deceased had come to the house and she was alone and insulted her, and then testified that she had related in detail to her husband on the night before the killing the acts and conduct of deceased. That the State then offered in evidence the questions and answers in cross-examination of said witness as follows: "Q. What did your husband say in reply when you told him what had happened between you and Lon Jenkins? A. He never said anything that I remember. Q. When you told your husband, the defendant in this case, about you and Lon Jenkins, did he ask you any questions? A. I do not remember any questions he asked." Appellant objected to this cross-examination on the ground that same was irrelevant and immaterial, and not in cross-examination of any matter testified to by the witness, the wife of the defendant, or of any matter about which she was interrogated on direct examination. The objection being overruled, the questions and answers as

above set forth were read to the jury. After all the evidence was closed in the case, the court informed appellant's counsel that he was going to exclude the testimony above set forth of the witness, Mrs. Barbee, which was admitted over appellant's objection. Appellant's counsel contended that the testimony had been read to the jury and for the court to reread it for the purpose of excluding it, was simply to emphasize it and the effect of it could not be thereby withdrawn from the jury, and all the injury to defendant that could be done by the introduction of the evidence had been accomplished, and defendant was entitled to his bill for the admission of it over his objection. Whereupon the court of his own motion reread to the jury the questions and answers above set forth and instructed the jury that said evidence was withdrawn from them, and that they could not consider it in the case at all for any purpose. The court told the jury that they could not consider said cross-examination, that the same was withdrawn. If this testimony had been erroneously admitted, when the court at the instance of appellant withdrew same, it would be a matter of which appellant could not complain, that is the withdrawal of it, since if error at all, under that state of facts, it would be an error committed by the court at the instance of appellant. But we take it the learned trial court was in error in excluding this testimony. The State was entitled to same. Under the statutes of this State where part of a conversation is introduced all parts and parcels of the same conversation that illustrates or explains any other portion of the conversation are admissible. This testimony was clearly admissible under this statutory rule.

2. Bill of exceptions No. 2 shows that while appellant was introducing the depositions of appellant's wife to the effect that on the night before the killing in March, while they were thrashing oats at defendant's, deceased had come to the house and she was alone and insulted her, and then testified that she had related in detail to her husband on the night before the killing the acts and conduct of deceased, the witness detailing in her testimony what she had told her husband, the defendant. Thereupon appellant introduced his son, Frank Barbee, who testified on direct examination in substance, that his father, the defendant, had lived for several years near Howe on a farm, from which place he moved in August, prior to the killing, to a place near Southmayd, about fourteen miles away. That appellant employed deceased to finish gathering his crop near Howe, and witness remained on the farm and lived with Jenkins and assisted about gathering the crop. That when witness left deceased's home he left some laundry there and on the day before the killing when witness started after his laundry deceased refused to give it to him, and claimed that defendant owed him, deceased, and said he would hold the laundry until the debt was paid, and told witness to tell defendant if he denied owing him, he was a God-damned old liar. That when witness returned home about five o'clock on the evening before the killing he in-

formed defendant of what had transpired between him and deceased. Thereupon on cross-examination of said witness State's counsel asked him the following question: "If when defendant moved away from Howe up to Southmayd witness' mother knew where witness was going to stay? If during the time witness lived with deceased, his mother knew about it, and if witness' mother ever told him not to associate with deceased, and if she ever made any objection to witness associating with deceased." To which questions and answers the defendant objected on the ground that same was irrelevant, immaterial and hearsay, and throws no light on any issue in the case, which objection was by the court overruled, and the witness being required to answer testified that when defendant moved away from Howe to Southmayd, witness' mother knew that witness was going to stay with deceased, and during the time witness lived with deceased, his mother, Mrs. Barbee, knew about it and never did tell witness not to associate with the deceased and never did make any objection to witness associating with deceased. This testimony was clearly admissible, since it tends to discredit the testimony of the mother wherein she testified of insults offered by the deceased, and thereby rendered improbable that she told appellant that deceased had insulted her. It is true, it does not conclusively establish the fact, but it largely tends in that direction, and if appellant was not told that deceased had insulted his wife, then this killing would have been under the evidence, outside of appellant's defense, murder in the first degree, or at least murder in the second degree. Here we have a case where appellant is relying as a defense for the crime upon insults to his wife. It then became a pertinent inquiry as to whether said insult was offered. Any circumstances, therefore, however shadowy or remote that tends to disprove the defense, is admissible on the part of the State for that purpose. Certainly, appellant would have strenuously and justly insisted that if the wife had made a great cry upon being insulted, ran away from the place where the insult was offered, that this res gestae act, so to speak, would have been admissible as corroborative of the verity of her statement that deceased had insulted her. Now then, if her conduct is such as not to indicate any resentment towards the deceased, it goes strongly to indicate that no such insult was offered. The testimony was admissible.

3.  Bill of exceptions No. 3 shows that the State introduced Jim Poindexter and proved by him that on the morning of the homicide, about eleven o'clock, he met appellant in Sam Reisenburg's place of business, and had a drink of frosty with him and others; that afterwards, about half past eleven o'clock he met appellant and had another drink of frosty with him, and that on that occasion appellant asked him if he had seen deceased, and told him that he wanted to see deceased, that one of his boys had a little trouble with deceased the evening before, and that he wanted to straighten it up. That he appeared to be mad and told witness that when his boy told him about

the trouble with deceased the evening before he was awful mad. That appellant then called witness back to the backyard of Sam Reisenburg's place of business; he and defendant were together, and that he saw the appellant with something. Whereupon the State's counsel asked the witness what it was that he saw defendant with, to which question at the time it was asked appellant objected on the ground that it was irrelevant and immaterial, and in no way connected with this transaction, prejudicial to the rights of appellant; that what this witness will testify will not throw any light on this transaction. The objections being overruled, the witness testified that when he and defendant went to the rear of Reisenburg's place of business that the defendant exhibited to him a pistol. Appellant in the bill, in addition to the above objections, states that this case has been tried twice, and the testimony showed the appellant killed the deceased on the public square in Sherman about twelve o'clock by shooting him with a pistol, and that the pistol was the pistol of defendant, and that he brought it with him to town from his home in the country on the morning of the homicide, and that there was never any dispute over this proposition on those trials, nor was there any dispute on the present trial. If as the bill shows there was no dispute or cavil over the fact that appellant brought his own pistol with him from home, then certainly it would not be inadmissible to show by this witness, whose testimony is complained of in this bill, that appellant exhibited the pistol to him. On that phase it could simply be cumulative evidence of an admitted fact, and, therefore, would be harmless on that theory; but it is also admissible to show the mental status of the appellant just prior to the difficulty. Here he is found talking in Reisenburg's place of business with the witness, telling him about some laundry, which goes to a very large extent to show that the killing did not occur on account of the insults to his wife, but was on account of indignities and insults offered his son. This testimony was very material, from the State's standpoint, to establish the fact that the motive for the killing was not insults but malice on account of the previous difficulty or quarrel that deceased had had with appellant's son. It follows the testimony was admissible.

4. Bill of exceptions No. 4 complains that on cross-examination the State was permitted to ask Frank Barbee, appellant's son, the following question: "If after defendant and his family had moved deceased came over to defendant's house? If witness noticed any difference in the relationship between deceased and Mrs. Barbee up until the time deceased was killed?" Appellant objected to this testimony on the ground that it was irrelevant, immaterial and hearsay, and an effort to impeach Mrs. Barbee, and called for a conclusion and opinion of the witness, and could not in any way affect the matter of what information was given defendant by his wife. Over objection the witness testified "that deceased was at defendant's house once after defendant and his family had moved to Southmayd, which the testimony

showed was in August after defendant's wife claimed the insult was offered her in July, and on that occasion deceased stayed all night at defendant's and ate there with the family, and that he did not notice any difference in the relationship between deceased and his mother, Mrs. Barbee, up to the time the deceased was killed." This question has been discussed above. We think the testimony was clearly admissible.

5. Bill of exceptions No. 5 shows that the State introduced Fred Lyall, and after said witness had testified to the facts and circumstances of the homicide, that he saw the defendant shoot the deceased; that he saw the deceased before the shooting; that he was standing with both hands resting on the hind gate of a wagon and making no demonstrations or movement whatever at the time he was shot. After said witness had been examined, cross-examined, re-examined, and was again being cross-examined, said witness on a former trial testified: that it was about a second he reckoned after the shot was fired before he saw the deceased, and that he knew that it was after the shot was fired that he first saw the deceased, appellant's counsel asked said witness if it was not a fact that on the previous trial the following question was asked him: "How long after the shot was fired was it before you saw Jenkins?" and if he did not answer "About a second." To which question the witness answered: "I don't remember whether I did or not." Whereupon counsel for appellant asked the witness if that statement was correct, to which question the State objected on the ground that it called for a conclusion of the witness, was argumentative and improper, which objection was by the court sustained, and the answer of the witness was excluded. Whereupon appellant's counsel asked said witness the further question, if on the former trial the following question was not asked him: "The first time you saw Jenkins was about a second after the shot was fired, was it?" and if the witness did not answer "I suppose it was," to which the witness answered that he did not remember whether the question was asked and answered that way or not. Whereupon counsel for appellant asked said witness if on the former trial the following question was not asked him: "You know it was after the shot fired," and if the witness did not on a former trial answer, "Yes, sir," to which question the witness answered, "I don't remember whether I answered it that way or not." Whereupon counsel for appellant asked him if he did was that the truth, to which question the State interposed the objection that the question called for a conclusion, was argumentative and improper, which objection was by the court sustained, and the answer of the witness excluded. If said witness had been permitted to answer said question appellant's counsel expected to be able to show by the said witness and cause said witness to admit that having testified on a previous trial that he did not see the deceased until after the shot was fired, and admit that he did not see the deceased before the shot was fired. The bill is approved with this qualification: "This bill allowed with the qualification that the

only answer the witness could have made to such question was either yes or no, and it is the court's opinion that from the record of this witness' testimony counsel for defendant would have been unable to have secured such admission from the witness. The bill is defective in not stating what the witness would have sworn. Counsel for appellant stated they expected to be able to show that witness would swear as suggested, but they do not say the witness would have so sworn. The court says in the light of the record he does not think the witness would have so sworn as appellant states. We are left to conjecture as to what the witness would or would not have sworn. Where a witness testifies in a trial, and subsequently testifies in the same trial, it is legitimate and proper to ask him what he swore on the first trial, and lay a predicate to contradict him as to what he did testify. It would not be a conclusion of the witness as State's counsel seems to insist for him to state what he testified on a former trial, but in the shape of this bill we can not tell whether there was any error in the ruling of the court or not, since we can not tell what the witness' testimony would have been.

6. Bill of exceptions No. 6 presents exactly the same matter, and the court appends to the bill the following statement: "This bill is allowed with the qualification that all the answer the witness could have made to the question as propounded was that if he had made such answer at a former trial, it was either correct or incorrect." So it will be seen, as stated above, the bill does not show what the witness would have stated, and we can not say whether there was any error in the ruling of the court or not.

7. Bill of exceptions No. 7 complains that after the witness Holt had testified in direct examination that he was in his office in the second story of a building, a short distance south of where the shooting occurred, that the window in his office was up; that he was near the window and heard a shot fired and instantly arose from his seat and looked out and saw a man lying partially under a wagon, and saw the man making a movement with his left hand, and put his left hand up to his pocket, appellant's counsel asked said witness whether or not deceased in making said movement made any impression on witness' mind as to what the deceased was doing. State's counsel objected on the ground that the same was irrelevant, immaterial, and a conclusion. Appellant's counsel then asked the witness, "What impression did that movement of deceased make on your mind, if any, as to what the deceased was doing?" Counsel for the State objected, and the court sustained the objection. The witness, if permitted to do so, would have testified that the movement by the deceased did make an impression on the mind of the witness at the time, and that such impression was that deceased in making the movement closed or shut a knife and put it in his pocket. This testimony was not admissible. At the time deceased was moving his hand appellant could not have acted on anything deceased was doing.

8.   Bill of exceptions No. 8 urges various objections to the charge of the court.   It is a stereotyped charge on manslaughter, and murder in the first and second degree.

9.   Appellant complains of the sixteenth paragraph of the court's charge, because it blends two theories of self-defense, is confusing and misleading in that it is not a clear affirmative submission of the issue of self-defense as made by the evidence offered by appellant, and confines the right of self-defense on the part of the defendant to an actual attack by deceased, and to actual danger from deceased, and limits the appellant's right to act in self-defense, and confines his right of self-defense to the use only of such means as were actually necessary; that it excludes the idea of apparent danger and apparent necessity, is not called for by the evidence, is not applicable to the facts in the case, is contradictory in its terms, and confusing and misleading.   None of these criticisms are correct.   The charge very properly presents all the law applicable to the facts of this case.

10.   Bill of exceptions No. 9 complains of the eighth paragraph of the court's charge wherein the jury were instructed, "The provocation must arise at the time of the commission of the offense and that the passion is not the result of a former provocation."   The court properly instructed the jury as to the law of manslaughter based on the insult to the wife.   This portion of the court's charge can only be held to apply to the issue of manslaughter, as this issue was based on the facts occurring at the time of the homicide.   Appellant excepted to that portion of the charge because the only evidence of adequate cause and the only ground to reduce the killing to manslaughter was the evidence of the insult toward the wife of appellant by deceased, and the charge complained of is misleading, restrictive of and prejudicial to the rights of appellant.   On the former appeal of this case we held that the court below very properly charged on manslaughter, following the authority of Swain v. State, 48 Texas Crim. Rep., 98, and others that have laid down a similar rule.   But if the evidence in this case does not suggest manslaughter upon sudden impulse, as appellant insists, it could not in the nature of things have injured the rights of appellant, since appellant was found guilty of murder in the second degree with the minimum punishment.   If appellant had been convicted of manslaughter on any given state of facts, the statute of this State defining the grounds of a motion for new trial says that the fact that a defendant has been convicted of a lower grade of offense than that which he is guilty of is not a ground for a new trial.   Then suppose the evidence in this case did not suggest manslaughter, but the appellant is given the benefit of a manslaughter charge, the jury have seen fit not to award him that benefit.   Could a charge upon an issue not presented by the evidence, which the jury did not find appellant guilty of, and which charge authorized them to find a lower grade than he was guilty of, be injurious to appellant?   We say not.   So waiving the question as to whether manslaughter upon sudden impulse is suggested

by this evidence, and conceding for the sake of argument that it does not, still an erroneous charge on that phase of manslaughter could not have injured appellant, because it authorized the jury to convict him of a lower grade of offense than the evidence warranted. We very properly said in the former opinion of this case, that to present manslaughter upon sudden impulse did not confuse a proper charge on manslaughter predicated upon first meeting on account of insults to a female relative. In other words, it is proper where the evidence suggests it, for the court to charge on manslaughter upon sudden impulse. Then if the evidence suggests that appellant killed deceased upon first meeting on account of insults to a female relative, it is proper and required that the court should charge on that issue. It follows, therefore, on either phase of the question that it may be looked at, that there was no error in the charge of the court presenting manslaughter upon sudden impulse. The evidence very cogently and positively establishes the fact that deceased and appellant's son had had a very bitter and acrimonious quarrel the day before. On the morning of the killing appellant was seen in a store in the town of Sherman exhibiting his pistol to a friend, expressing great anger at the deceased on account of this difference that deceased had had with his son. Now, at the time he met deceased if his mind was thereby rendered incapable of cool reflection, and laboring under that condition of mind he slew deceased, it would be killing upon sudden impulse, upon adequate cause, and would be manslaughter. On the other hand, if the killing of deceased was through settled and sedate resentment at indignities that had been previously offered to his son, it would either be murder in the first or second degree, according to the other circumstances surrounding the killing. The jury have seen fit to convict appellant of murder in the second degree. The evidence amply warrants the verdict. The charge in all of its phases properly presents the law applicable to the facts in the case.

Finding no error in the record, the judgment is in all things affirmed.

*Affirmed.*

### ON REHEARING.

#### January 26, 1910.

RAMSEY, JUDGE.—We think on further reflection that there was error in the conclusion reached in affirming the judgment in this case and that a rehearing should be granted and the cause remanded for another trial.

The fourteenth and fifteenth paragraphs of the court's charge are as follows: "14. Again, if you find and believe from the evidence that the defendant, E. L. Barbee, on the night previous to the homicide, was informed by his wife that the deceased, Lon Jenkins, had some time in July of the previous year, at the home of defendant, insulted his said wife by making improper proposals to her and by placing his hands upon her person; and if you further believe from the evidence

that defendant believed the statement thus made to him, if you believe same was made to him; and if you further believe from the evidence that the defendant was thereby aroused to such degree of anger, rage, sudden resentment or other violent emotion of the mind as rendered his mind incapable of cool reflection, and that at the first meeting with the said Lon Jenkins after being informed of such conduct on the part of the said Jenkins towards his, defendant's wife, and while under the influence of such passion and prompted thereby and not in the defense of himself against real or apparent danger from said Jenkins, he shot with a pistol and thereby killed said Jenkins, such killing would be manslaughter.

"15.   Also, if you find and believe from the evidence that the defendant, on the night previous to the homicide, was so informed of the said conduct of the said Jenkins toward his wife; and if you further believe from the evidence that on the occasion of the homicide the defendant approached the deceased and inquired of him in reference to said conduct of said Jenkins toward defendant's wife; and if you further believe from the evidence that thereupon the deceased used violent language and threatened him, defendant, with bodily injury; and if you further believe from the evidence that by reason of the said information, if any, so received from his said wife, and by reason of the language and conduct of the deceased on said occasion, if you find there was any such language or conduct on said occasion, the defendant's mind was aroused to such a degree of anger, rage, sudden resentment, terror or other violent emotion of the mind as rendered it incapable of cool reflection, and that while under the influence of such passion, and prompted thereby, and not in the defense of himself against real or apparent danger from said Jenkins, as the issue of self-defense is hereinafter submitted to you, defendant shot and killed said Jenkins, such killing would be manslaughter." We think there could be no doubt that the last paragraph of the court's charge copied above is erroneous in that before appellant would be entitled to an acquittal of murder in the second degree, and a reduction of his offense to manslaughter, the jury were required to believe not only the affirmative of the issue of insulting conduct towards his wife, but further to find that the deceased had used violent language to and threatened appellant with bodily harm; and further that under such charge before the jury were authorized to find that such violent language and threatened injury would reduce the offense to manslaughter, they must further believe the insulting conduct towards appellant's wife. We believe further that the two paragraphs of the court's charge are in irreconcilable conflict. Under the fourteenth paragraph insulting conduct toward appellant's wife is made, as a matter of law, if believed, adequate cause, and the jury are instructed that if his mind was aroused to sudden anger and on the first meeting he killed deceased that the offense would be manslaughter. Whereas, in the next paragraph of the court's charge it is required that both insulting conduct

and the violent language and threatened injury must be found to be true. Wherever the law makes any given fact adequate cause, a defendant is entitled to a positive and unequivocal instruction that if such fact is proven, it is adequate cause. And where any one or more issues are raised by the evidence either of which, if found to be true, would as a fact constitute adequate cause, the jury should be so instructed, and it is error to blend the two and require that the affirmative of both issues must be found. Hightower v. State, 53 Texas Crim. Rep., 486, and Casey v. State, 54 Texas Crim. Rep., 584.

We think in view of all the facts that this charge may and probably did contribute to and bring about appellant's conviction of murder in the second degree, and being convinced that it is erroneous we think we ought to grant a rehearing, which is here done, and the case is reversed and the cause remanded for another trial.

*Reversed and remanded.*