JOHN MEEKS v. THE STATE.

No. 19606. Delivered April 27, 1938.
Rehearing denied June 15, 1938.

The opinion states the case.

*J. W. Mercer,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder without malice; the punishment, confinement in the penitentiary for two years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Charlie Kirk by shooting him with a pistol.

Deceased and his wife had separated. Shortly prior to the homicide they had adjusted their differences and were preparing to live together. On the night of the homicide appellant and his wife and deceased's wife, who was the sister of appellant's wife, were riding together in an automobile. Deceased became angry upon learning that his wife was with the appellant. A witness for appellant testified that deceased came to her home

a few minutes before the homicide and declared that he was going to kill the appellant. Following the appellant in his automobile, deceased commanded appellant to stop his car, which he did. Deceased then walked to appellant's car, saying to him: "I told you not to interfere with my affairs." According to the testimony of the wife of deceased, who was a State's witness, appellant immediately drew his pistol and shot deceased. Deceased then drew his pistol and he and appellant exchanged several shots. Appellant received three wounds in the leg which shattered the bone. Deceased died before he could be removed from the scene of the difficulty.

Appellant testified, in substance, as follows: As he drove by the home of deceased shortly prior to the homicide deceased's wife hollered: "Hello Charlie, [referring to deceased] you s— of a b—." He (appellant) remonstrated with her, saying that she would cause trouble. He proceeded to drive toward the home of deceased's wife. Before they reached their destination deceased overtook them and forced him to stop his car. Approaching the car, deceased said to him: "You s— of a b—! Can't you hear me say 'Stop that car'?" After reaching the car deceased said: "I thought I told you not to interfere with my affairs or business." At this juncture deceased pulled his pistol and shot at him. Procuring his pistol, he attempted to get out of the car and deceased fired at him again. He did not shoot deceased until he (deceased) had fired three shots at him. He received three wounds at the hands of the deceased.

It is observed from the foregoing brief statement of the evidence that it was a closely contested issue whether appellant or deceased began the difficulty. The court charged on self-defense. Appellant introduced testimony showing deceased made an uncommunicated threat to kill him. Appellant had summoned no witnesses, but upon the trial introduced witnesses who had been summoned by the State. At 5 P. M. on the 5th of October, 1937, after the State had rested its case and appellant had introduced ten witnesses, counsel for the appellant requested the court that he be permitted to introduce further testimony the following morning, stating to the court that he desired to introduce one Muse, who would testify that prior to the homicide deceased had threatened to kill the appellant. At this juncture we quote from the bill of exception:

"The court then told counsel that he would be permitted to use Muse if he would procure him that afternoon, and that a reasonable time would be given him to produce Muse. The court then waited some time for defendant's counsel, who had retired

from the court room, to produce Muse. After some delay, defendant's counsel returned into open court and stated that Muse was not available and he would waive his privilege and that defendant's testimony was closed. The state then announced that its evidence was closed. The court then prepared the charge and presented it to counsel for the state and for the defendant. At 8:30 A. M., October 6, 1937, defendant's counsel presented to the court his objections and exceptions to the court's charge. After the court had amended his charge, at about 9:30 A. M., October 6, 1937, the court ordered the jury brought into the court to hear the court's charge and the arguments of counsel. Then it was that defendant's counsel made his motion to reopen the case and put on the testimony of the persons named in his motion, to-wit: C. H. Landis and R. J. Sloan, neither of whom had ever been summoned as witnesses and no process issued."

It appears from the bill of exception that the witnesses were present in court and would have testified that deceased had the general reputation of being a violent and dangerous man. The court declined to permit appellant to introduce the testimony on the ground that there was no claim that it was newly discovered, and on the further ground that the court was of the opinion that the trial would be unduly prolonged.

Article 643, C. C. P., reads as follows: "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appear that it is necessary to a due administration of justice."

In Stone v. State, 239 S. W. 209, this Court, speaking through Presiding Judge MORROW, used language as follows:

"It is within the discretion of the trial court to refuse to hear testimony proffered after the beginning of the argument, and only when the discretion is clearly abused will the action be reviewed. * * *

"Concerning the testimony offered before the argument begins, the discretion of the court is not so broad. DeLerosa v. State, 74 Texas Crim. Rep. 604, 170 S. W. 313. In fact, under the latter circumstances, if the proffered evidence is material and bears directly upon the main issues in the case, it would not be within the discretion of the court to exclude it unless it was offered under conditions which would impede the progress of the trial or in some way interfere with the due and orderly administration of justice."

See Sloan v. State, 37 S. W. (2d) 1019.

In Steadham v. State, 43 S. W. (2d) 944, it appears that the trial had proceeded until 10:30 P. M., at which time the counsel for Steadham requested the court not to close the evidence but to hold the case until 9 o'clock the next morning in order that he might have an opportunity to produce certain material witnesses. The court refused the request, but stated to counsel that he would give him until 12 o'clock that night to produce the witnesses. Counsel replied that he was unable to procure the witnesses in the time allowed. In holding that the action of the court in closing the case was erroneous, this Court said in the opinion on motion for rehearing that, under the circumstances, the request was not unreasonable. In the course of the opinion Judge HAWKINS used language as follows: "If he had produced the witnesses the next morning and requested permission to use them he would have brought himself squarely within Article 643, Code Crim. Proc. 1925, which provides: 'The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appear that it is necessary to a due administration of justice.'"

We do not understand that it was necessary for appellant to show the court that the proposed testimony was newly discovered. In Steadham v. State, supra, it is shown that the testimony of the witnesses the appellant was requesting the opportunity to present was purely impeaching. In the course of the opinion Judge HAWKINS said: "It is well understood that ordinarily a case will not be continued or postponed, or a new trial granted, for purely impeaching testimony. Appellant was seeking none of these. The case was on trial and about to be concluded at 10:30 at night when the exigency arose which confronted appellant. His only request was that he be given until 9 o'clock next morning to produce the witnesses named. This request seems not unreasonable."

In the present case appellant had his witnesses present before the court read his charge to the jury and prior to the time the argument began. It is true that the court states in the bill of exception that he was of opinion that the trial would be unduly prolonged. Necessarily further time would have been taken if the witnesses had been permitted to testify. It is not shown that a postponement would have resulted. In short, no facts and circumstances are presented which would in any manner indicate that the introduction of such testimony would have impeded the trial or in any way interfered with the due and orderly administration of justice. Under the circumstances, we

are constrained to hold that it was not within the discretion of the court to exclude the testimony.

The testimony was relevant and material under the rule that, where self-defense is an issue, the appellant may prove, for the purpose of showing who probably began the difficulty, that the deceased had the general reputation of being a violent and dangerous man. Such proof is admissible whether threats are involved or not. Ball v. State, 18 S. W. (2d) 641; King v. State, 286 S. W. 231; Reid v. State, 189 S. W. 483; Daniels v. State, 126 S. W. 1153; Ross v. State, 29 S. W. (2d) 381; Richardson v. State, 253 S. W. 273. We have heretofore stated that appellant introduced proof to the effect that deceased had made an uncommunicated threat to kill him. The testimony of the witnesses would not have been cumulative, as no witness had testified that deceased had the general reputation of being a violent and dangerous man. In view of the fact that it was a closely contested issue whether appellant or deceased began the difficulty, it can not be said that the excluded testimony would not probably have turned the scales in appellant's favor.

The judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

KRUEGER, JUDGE.—The State, in its motion for rehearing, insists that we erred in our original opinion in holding that the trial court committed reversible error by declining to grant appellant's motion to reopen the case and permit him to offer further material testimony before the court had read his charge to the jury and any argument had been made.

We have again examined the record and reviewed the authorities bearing on the question, but see no good reason for receding from our original opinion.

The motion for a rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.