## S. L. STANLEY V. THE STATE.

No. 20769.   Delivered February 21, 1940.

The opinion states the case.

*Burch Downman* and *King C. Haynie, both* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is keeping and exhibiting a gaming device; the punishment, confinement in the penitentiary for two years.

It was charged in the indictment that appellant and F. E. Von Mockel "did directly and through their agent, M. A. Rutledge, keep and exhibit for the purpose of gaming a gaming device, to-wit: a marble machine." The case was submitted to the jury alone upon the theory that appellant acted through Rutledge, his alleged agent. The marble machine in question was kept and exhibited in the barber shop of M. A. Rutledge. The State relied almost entirely upon the testimony of C. L. Permenter. He testified that he had bought from appellant a half interest in several marble machines. One of these machines, according to the testimony of Permenter, had been placed in the barber shop of Rutledge. Appellant testified that he had no interest in the machines but had sold them outright. He testified, further, that he had no control over the machines and received none of the revenue derived from their operation.

Bill of exception No. 12 presents the following occurrence: On his direct-examination C. L. Permenter, a witness for the State, testified that he had a conversation with appellant in Houston, Texas, in which appellant told him how the marble machines in question were to be operated. On cross-examination the witness denied that he had made a statement in the office of Burch Downman, in the City of Houston, on the 26th of November, 1938, to Miss Ann Linebarger to the effect that appellant had declined to discuss with him any phase of the marble machine business or the operation of the marble machines in question. The witness admitted that he was present

in Mr. Downman's office at the time in question and that Miss Ann Linebarger was also there. In his testimony appellant denied that he ever talked to Permenter about the operation of the marble machines. He testified, further, that he refused to discuss their operation with Permenter. Further, it was appellant's version, as shown in the bill of exception, that he had sold the marble machines, had retained no interest in them, received no proceeds from them, and had nothing to do with their operation. At this juncture we quote from the bill of exception, as follows:

"During the trial of this cause, on Saturday morning, at about 10:15 a. m., on the 13th day of May, A. D. 1939, and before the jury had been recalled to the jury box, and after both sides had closed, and before the main charge of the court had been read to the jury, the defendant requested the court to allow him to place Ann Linebarger on the witness stand, who was in the court room at that time, for the purpose of impeaching the testimony of the State's witness, C. L. Permenter, wherein he had stated that he did not state in Mr. Downman's office as aforesaid, that Stanley (appellant) would not discuss any phase of the marble machine business or the operation of the particular machine in question. Counsel for defendant stated that he had been unable to locate said witness until the night of May 12, 1939, and that the witness was in court at the time said testimony was offered. The court refused to permit said witness to testify in said cause, to which defendant, then and there in open court excepted."

It is stated in the bill of exception that Miss Ann Linebarger would have testified that Permenter had stated to her on the occasion in question that appellant would not discuss with him "any phase of the marble machine business or the operation of the particular machine in question." In his qualification to the bill of exception the court states that appellant had issued no process for Miss Linebarger; that she was an employee of Burch Downman, counsel for appellant; that both sides rested at 4 p. m., on May 12, 1939; that no request was made by appellant or his counsel that they be permitted to secure the attendance of Miss Linebarger; that at the time the parties rested both the witnesses for the State and the defendant had been excused. At this juncture we quote from the qualification, as follows: "Such request was refused by the court, the court finding at said time that defendant and his counsel had had ample notice and opportunity to secure the attendance

of said witness before both sides had rested and before the witnesses had been excused; and had failed to do so."

It is observed that it was a closely contested issue whether appellant had any interest in the marble machines in question. It can not be said that the testimony of Miss Linebarger would not have probably turned the scales in appellant's favor. It can not be assumed that counsel for appellant knew Miss Linebarger's evidence would be pertinent until after Permenter had given testimony contrary to his statement in the presence of Miss Linebarger. In Steadham v. State, 43 S. W. (2d) 944, it appears that the trial had proceeded until 10:30 p. m., at which time the counsel for Steadham requested the court not to close the evidence but to hold the case until 9 o'clock the next morning in order that he might have an opportunity to produce certain material witnesses. The court refused the request but stated to counsel that he would give him until 12 o'clock that night to produce the witnesses. Counsel replied that he was unable to produce the witnesses in the time allowed. In holding that the action of the court in concluding the case was erroneous, this court said, in the opinion on motion for rehearing, that, under the circumstances, the request was not unreasonable. In the course of the opinion Judge Hawkins used language as follows: "If he had produced the witnesses the next morning and requested permission to use them he would have brought himself squarely within article 643, Code Cr. Proc. 1925, which provides: 'The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appear that it is necessary to a due administration of justice.' "

In the Steadham Case it is shown that the testimony of the witnesses that Steadham was requesting the opportunity to present was purely impeaching. In the course of the opinion Judge Hawkins said: "It is well understood that ordinarily a case will not be continued or postponed, or a new trial granted, for purely impeaching testimony. Appellant was seeking none of these. The case was on trial and about to be concluded at 10:30 at night when the exigency arose which confronted appellant. His only request was that he be given until 9 o'clock next morning to produce the witnesses named. The request seems not unreasonable."

In the present case appellant had his witness present before the court read his charge to the jury and prior to the time the argument began. Necessarily, further time would have been taken if the witness had been permitted to testify. However, it is not shown that a postponement would have resulted.

In short, no facts and circumstances are presented which would in any manner indicate that the introduction of such testimony would have impeded the trial or would have in any way interfered with the due and orderly administration of justice.

In Stone v. State, 239 S. W. 210, this court, speaking through Presiding Judge Morrow, used language as follows:

"It is within the discretion of the trial court to refuse to hear testimony proffered after the beginning of the argument, and only when the discretion is clearly abused will the action be reviewed. * * *

"Concerning the testimony offered before the argument begins, the discretion of the court is not so broad. DeLerosa v. State, 74 Tex. Cr. R. 604, 170 S. W. 313. In fact, under the latter circumstances, if the proffered evidence is material and bears directly on the main issues in the case, it would not be within the discretion of the court to exclude it unless it was offered under conditions which would impede the progress of the trial or in some way interfere with the due and orderly administration of justice."

See Slone v. State, 37 S. W. (2d) 1019, and Meeks v. State, 117 S. W. (2d) 454.

We think the charge of the court assumed that Rutledge was the appellant's agent. Upon another trial the jury should be required to find beyond a reasonable doubt that Rutledge was the agent of appellant. Also the charge should instruct the jury, in substance, to acquit appellant if they entertained a reasonable doubt upon the question of agency. Appellant's exceptions to the charge were probably not sufficient to have apprised the trial court that it was appellant's position that the court had assumed in the charge that Rutledge was an agent of the appellant. However, we call attention to the matter in view of the fact that a proper instruction may be given in the event of another trial.

For the error first herein discussed, the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.