BOBBY EMMETT DAVIDSON V. STATE

No. 27,919. February 1, 1956.

Appellant's Motion for Rehearing Denied
(Without Written Opinion) April 4, 1956.

*Frank D. Wear,* Paris, for appellant.

*Leighton Cornett,* County Attorney, Paris, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is burglary, the indictment alleging a prior conviction of an offense of the same nature; the punishment, enhanced under Art. 62 P. C., being 12 years in the penitentiary.

The evidence shows that about 1:45 A.M. on March 20, 1955, it was discovered that Eaglebarger's Service Station and Tire Store, in Paris, Texas, had been burglarized, entry having been made through a slatted door or window panel.

An iron safe had been moved from the office into the back portion of the building and the knob knocked off. Nitroglycerin jelly had been applied and caps and wires leading therefrom prepared, but the nitroglycerin had not been exploded.

Appellant and one Billy Dabbs were arrested the following morning on a Paris street.

That the burglary occurred and the safe was readied for opening by the use of an explosive is not questioned. Appellant's identity as one of the parties who committed the offense was the disputed issue at the trial.

The state's evidence by which appellant is shown to be a party to the burglary consists of the following:

Herbie Franklin Farris, an accomplice witness, testifying for the state, said that the burglary of the service station and tire store in Paris was planned in Dallas by appellant, Billy Dabbs, Gene Wynn and himself; that they came to Paris in Gene Wynn's car after going to Dabbs' home to get some tools, wire and blasting caps.

The witness Farris and Gene Wynn were arrested in Paris around 3 or 4 A.M. after appellant and Dabbs left the car, and Farris testified that he next saw appellant in jail.

Charles Endsley, age 18 and a senior in school, testified that he saw appellant "crossing the street in front of the Goodyear Store . . . as he ran across the street in front of my car," and that prior thereto he saw two men at the window of Eaglebarger's Service Station.

Endsley further testified that the two men stood at a window, then walked up the street and around the corner, and he went the same way to his car. The witness identified one of the men he saw after he turned the corner as being appellant, but having lost sight of the men and because he did not see his face before, he was unable to identify appellant as one of the two men he saw at the tire store, one of whom "had his arm in the window."

When appellant and Dabbs were arrested the officers "noticed the knees of their pants were dirty and the palms of their hands were greasy and black."

Scrapings from the soles of their shoes and trousers were sent to the Texas Department of Public Safety at Austin, with scrapings from the floor of the service station and tire store at the front of the safe. The officers observed that the scrapings from appellant's shoes and those from in front of the safe both contained "small flakes of something of a green color."

Charles Smith, chemist for the Texas Department of Public Safety, testified that he examined the two specimens and made a comparison of them, to see if there was any similarity between the two, and found that each contained two types of paint, of two colors. "One specimen was of two paints, an emerald green and a black background and the other was the same."

Following the route traveled by appellant, according to other witnesses, Officer Lloyd Matthews testified that he "found two flashlight batteries, electric cap and wires and a stick of nitroglycerin jelly."

The remaining testimony pointing to appellant as one of the guilty parties has been reserved for discussion until last because appellant's first and principal ground of appeal is directed to a part of the examination of this witness.

Bobby Love, 17 and a junior in Paris High School, testified that he was in company with Charles Endsley and saw appellant crossing the street by the Firestone Store in company with another boy, and that he first saw them "By the side of Eaglebarger's Service Station .... at the window on the east side .... They were right up against it, at the corner. .... Just saw them standing in the corner."

Bobby Love identified both appellant and his companion as the men he was testifying about.

On cross-examination the witness Love testified that he first noticed someone near Eaglebarger's "as we walked out the alley" but at that time could not identify him; that he "didn't see either Dabbs or Davidson at that time so you could recognize them by the side of Eaglebarger's." "Q. Not willing to tell the jury you saw them and could recognize them at the side of Eaglebarger's Service Station? A. Not at the side; no. No, sir."

The re-direct examination of the witness Bobby Love is as follows:

"Q. State whether, or not, you recognized them the first time you saw them as the men you saw on the street that night? A. The first time I saw them on the corner.

"Q. The first time you saw them in jail, you pointed out these two men? A. Yes, sir.

"Q. Tell the jury whether, or not, the two men you saw in the light on Lamar Avenue are the same two men you saw by the side of Eaglebarger's tire and service station? A. Yes, sir.

"MR. WEAR: He already testified to facts he couldn't identify them being the same. We object to it.

"THE COURT: Overruled.

"Q. What is your answer? A. They walked up the street.

"Q. The same two men you saw there walked up the street and later you could see and identify them in front of that light? A. Yes, sir.

"MR. WEAR: We object to that and ask that all the answer be stricken.

"THE COURT: Overruled.

"MR. WEAR: Note our exception for the reason it is not responsive and the testimony shows the witness is not qualified to make the statement and further, by his own testimony, he could not testify as a fact; further, the question is leading and placing in the witness' mouth words he wanted him to say. May we have our exception on that basis?

"THE COURT: Yes.

"MR. WEAR: The defendant moves the Court to exclude from the jury and instruct them not to consider for any purpose the answer of the witness to the last question, which was that they were the same men he saw at Eaglebarger's window, at the window in Eaglebarger's building, for the reason the witness previously testified to facts contradictory to such statement, and permitting the State to impeach its own witness and the question was leading and suggesting the answer desired by the County Attorney; further, the witness' testimony would be a matter of opinion as to a matter not the subject of opinion, and we ask the Court to instruct the jury not to consider it for any purpose.

"THE COURT: Overruled."

The objections and motion quoted are presented in argument of appellant's counsel as his principal point on this appeal, and in his brief as the second point.

It will be observed that each of the questions was answered before any objection was made, and that the motion to exclude was limited to the answer to the last question.

But assuming that objections were timely and sufficient, we see no error in the matter which would call for reversal.

As we understand the testimony of this witness, he first saw appellant so as to recognize him and be able to identify him as he was crossing the street and was walking up the street which was lighted, according to other witnesses, with "new Mercury lights," but that he had seen the same two men at and near the burglarized premises prior to their crossing the street.

Appellant defended on the ground of alibi, offering testimony

to the effect that he was in Dallas at the time the building was entered and the explosive set.

In the light of the testimony of the witness Bobby Love on direct and cross-examination, and of appellant's theory of defense, the re-direct examination was not of such character as to call for reversal.

The previous conviction alleged in Paragraph 3 of the indictment having been established by proof, appellant requested a special charge be given in connection with the law of circumstantial evidence, to the effect that such prior conviction and the evidence relating thereto could not be considered by the jury as any circumstance bearing upon the guilt or innocence of appellant with respect to the burglary for which he was on trial.

In paragraph 13 of the court's charge, the jury was instructed as follows: "You are further charged that even though you may find and believe from the evidence beyond a reasonable doubt that the defendant was finally convicted for the offense of burglary as charged in paragraph number three of the indictment herein, yet you are instructed that you cannot consider such conviction, if any, or any evidence relating thereto, if any, for any purpose whatsoever in passing upon the guilt, if any, or innocence, if any, of the defendant for the offense of burglary charged in paragraph number one of the indictment."

In view of this instruction, the refusal of the requested charge was not error.

There are other attacks upon the charge but they cannot be considered because not properly raised by objection and exception, or requested charge.

That portion of the indictment which alleged the prior conviction which was submitted to the jury begins as follows: "And the Grand Jurors aforesaid do further present that prior to the commission of the aforesaid primary offenses by the said Bobby Emmett Davidson, to-wit: on the 19th day of February, A. D. 1953, in Criminal District Court No. 2 of Dallas County, Texas, the said Bobby Emmett Davidson was duly and legally convicted of an offense of the same nature - - - ."

Appellant excepted to the paragraph mentioned, contending that the language quoted charged the commission of the primary

offense on the 19th day of February, 1953, and does not set out any date as the date of the prior conviction.

The indictment alleged that the burglary of the Eaglebarger building in Lamar County was committed on or about March 20, 1955, and the date February 19, 1953, shown in the quotation from Paragraph 3 had reference to the date of the Dallas County conviction.

The remaining ground for reversal is presented as the third point in appellant's brief: "Error committed by the court in refusing to permit the defendant to perfect a bill of exception during the trial of the case."

The contention is that the provision of Sec. 2(a) of Art. 759a V.A.C.C.P. is mandatory, which provides: "Where the defendant offers testimony which is rejected by the court, the judge, if requested by defense counsel, shall immediately retire the jury and hear such testimony to allow defendant to perfect his bill of exception."

We have held that where full opportunity to perfect his bill is thereafter afforded, the refusal of the request of appellant to retire the jury and hear the testimony at the time it is offered and rejected is not reversible error. Salter v. State, 159 Tex. Cr. R. 281, 288 S.W. 213; Dement v. State, 39 Tex. Cr. R. Rep. 202, 275 S.W. 2d 684.

In order to warrant a reversal for the refusal of the trial court to re-open the case and permit the introduction of further testimony, it must clearly appear that the court abused his discretion and that the appellant was prejudiced by such refusal. Hamilton v. State, 141 Tex. Cr. R. 614, 150 S.W. 2d 395, 402; Ford v. State, 97 Tex. Cr. R. 55, 261 S.W. 141; Heidingsfelder v. State, 128 Tex. Cr. R. 351, 81 S.W. 2d 510, 517; Elsworth v. State, 52 Tex. Cr. R. 1, 104 S.W. 903; Crawford v. State, 105 Tex. Cr. R. 281, 288 S.W. 213; Demet v. State, 39 Tex. Cr. R. 271, 45 S.W. 915.

To show such prejudice it was not sufficient that appellant's counsel state what he expected the witness to testify, but it was incumbent that he show that the winess, if permitted to testify further, would have given such testimony. 4 Tex. Jur., p. 319-320, Sec. 219; Castlin v. State, 57 S.W. 827; Moore v. State, 40 Tex. Cr. R. 439, 50 S.W. 942; Brown v. State, 74 Tex. Cr. R.

356, 169 S.W. 437; Delaney v. State, 123 Tex. Cr. R. 429, 59 S.W. 2d 397; Barbee v. State, 59 Tex. Cr. R. 129, 124 S.W. 961, 966.

We do not know what the witness would have testified. Counsel stated at the time he called the witness that he "*expects*" to prove certain things, but when he had an opportunity to prove to the court, at the hearing on the motion for new trial, that the witness would actually so testify, he then twice declined the court's tender of the witness. We must conclude from such conduct on the part of counsel that he had learned that his expectations as to the witness were unfounded and that the testimony of the witness would have been of no benefit to his client. Otherwise he would have accepted the court's tender and developed the facts.

Appellant's counsel recognized the necessity of completing his bill of exception by having Farris testify for the purpose of his bill. But being refused permission to then examine the witness Farris for the purpose of the bill, he elected to rely upon such refusal, rather than to avail himself of the opportunity thereafter given him to examine Farris and perfect his bill to the court's refusal to re-open and permit him to testify.

Appellant's claim for reversal is therefore predicated solely on the fact that he was not allowed to examine the witness Farris for the purpose of his bill at the time his request to re-open and recall Farris was denied.

Full opportunity having been thereafter offered appellant to examine Farris and perfect his bill by showing what his additional testimony would have been, no injury to appellant is shown. Salter v. State, 159 Tex. Cr. R. 482, 264 S.W. 2d 719; Weeks v. State, 161 Tex. Cr. Rep. 202, 275 S.W. 2d 684.

No abuse of discretion being shown in the court's action in postponing the examination of Farris for the purpose of the bill until a later time, or in refusing the request to re-open the case and present further cross-examination of the witness Farris, we find no reversible error.

The judgment is affirmed.

DAVIDSON, Judge (dissenting).

In order to prove that appellant was connected with the burglary, the state relied, chiefly, upon the following facts:

The witness Farris, who was under indictment for the same offense and was an accomplice witness, testified that he, Gene Wynn, Billy Dabbs, and the appellant entered into a conspiracy in Dallas, where they resided, to burglarize the Eaglebarger service station in Paris. In pursuance of that conspiracy, all parties came to Paris in Wynn's automobile. Dabbs and the appellant were to commit the burglary and "get the money out of the safe," while the witness and Wynn kept watch. Upon arriving in Paris, Dabbs and the appellant got out of the automobile "on the Plaza." Witness and Wynn went to a tourist court, and saw nothing more of Dabbs and appellant until they were brought to jail. The witness was not interrogated as to his whereabouts when the burglary was committed, nor did he testify relative to whether he and Wynn carried out and performed their part of the conspiracy.

After appellant had introduced testimony showing that he was in Dallas at the time of the burglary, it appears that, upon both sides announcing that the evidence was closed, court was adjourned until the following morning. When court reconvened, appellant sought permission to reopen the testimony. The court granted such request and, thereupon, appellant called Wynn as a witness in his behalf.

Because he was under indictment for the same offense and could not be called by the appellant to testify, the state's objection to the testimony of the witness was sustained. Appellant's counsel then stated to the court:

"The testimony we wanted to elicit we didn't hear about until this morning and had no information to base any questions on until this morning and if we can't prove it by this witness, we would like to have the opportunity to prove it by another witness."

Thereupon, appellant's counsel asked that the accomplice witness Farris be called, as he could develop from him the same facts that he expected to prove by Wynn. The state objected to the further reopening of the testimony in the case and to the recalling of the witness Farris to testify. This objection was sustained and the appellant was refused permission to recall the witness Farris for further questioning.

Counsel for the appellant was then permitted to perfect his bill of exception and to state what he expected to prove by the witness — which he did, as follows:

"The Court having overruled permission of counsel for the defendant to call Herbert Franklin Farris to the stand for the purpose of showing for his bill of exceptions what testimony he seeks to elicit by the witness Farris, states that he the witness, he expects that the witness Farris if permitted to testify, would testify that on the night of March 20, 1955, he came to Paris in company with another individual whose name is not known to this defendant or his counsel, but that he did not come to Paris as he testified yesterday with Gene Wynn, William James Dabbs and Bobby Davidson; that he and this unnamed man broke into Eaglebarger's filling station on the night of March 20, 1955 at approximately between 12:30—between 12:00 and 12:30 A.M. and were disturbed after they had damaged the safe therein and placed a charge of nitroglycerin on the door and that they got scared and left the place; that the other man went his way, which was unknown to Farris, but that Farris had met Wynn while both were serving in the penitentiary at Huntsville, Texas; that sometime after one o'clock and before two-thirty on the Sunday Morning of March 20, 1955—he went to the Main tourist courts looking for Wynn whom he had known while in the penitentiary, and that he stayed there with Wynn until the officers of the County came out and arrested him and placed him in jail; that later while he was in jail, he told Wynn, after he had been in jail for less than two weeks and after Wynn had been placed in jail, that he and another man had burglarized Eagleberger's place of business; that he had been convicted so many times, he was an habitual criminal and that he could be sent to the pen for life for this burglary and to save himself from being sent to the pen for life, he had agreed with the officers and the prosecuting attorney to testify as a witness for the State in the trial of Bobby Emmett Davidson and Wynn and Dabbs and that in return for such promise, to testify against them, we would receive only a 2-year sentence instead of a sentence as a habitual criminal and that was the reason (which) prompted him to testify as he previously testified in this case."

There is no question but that the proffered testimony would have been material to the appellant, for it showed that the appellant was not connected with the burglary and that it was a retraction by a state's witness of very damaging testimony against appellant, thereby supporting his alibi defense.

There is no escape from the conclusion that the trial court deprived the appellant of this testimony by the witness before the jury, solely because he would not permit the testimony to be reopened.

Art. 643, C. C. P., reads as follows:

"The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appear that it is necessary to a due administration of justice."

Under that article, appellant's right to recall the witness and to develop the facts which he expected to prove by him is limited only to whether due administration of justice so required.

Authorities collated under that article in Vernon's C. C. P. show that the right to reopen the testimony in a case has been uniformly extended to both the state and the defendant, without constituting reversible error or an abuse of discretion by the trial courts in so doing. The basis of these holdings is that due administration of justice contemplates that all available testimony which is material to a decision of the case should be introduced upon the trial thereof.

The leniency which the courts have extended to the right to reopen the testimony in a case is in marked contrast to that applied to the refusal of that right and privilege. In such instances, the trial court's discretion is very definitely restricted. The rule controlling is stated in Stone v. State, 91 Tex. Cr. R. 313, 239 S. W. 209, as follows:

"Concerning the testimony offered before the argument begins, the discretion of the court is not so broad. DeLerosa v. State, 74 Tex. Cr. R. 604, 170 S. W. 313. In fact, under the latter circumstances, if the proffered evidence is material and bears directly upon the main issues in the case, it would not be within the discretion of the court to exclude it unless it was offered under conditions which would impede the progress of the trial or in some way interfere with the due administration of justice."

See: Sloane v. State, 118 Tex. Cr. R. 649, 37 S. W. 2d 1019; Meeks v. State, 135 Tex. Cr. R. 170, 117 S. W. 2d 454; Stanley v. State, 138 Tex. Cr. R. 486, 137 S. W. 2d 34.

The instant case comes within the rule stated. The testimony which the trial court refused to permit was highly material to the appellant and was a withdrawal of some of the most damaging evidence against him (appellant) by the witness who had given that testimony. The proffered testimony was not merely

impeaching in nature but was a complete retraction of evidence by the witness who gave it.

In connection with the refusal of the request to reopen the testimony, the trial court gave no explanation for his action nor did he say that it would unduly delay the trial of the case.

In its brief before this court, the state, though not seeking to justify the trial court's ruling, insists that the bill of exception was destroyed and the matter complained of therein waived on the hearing of the motion for new trial.

It is pointed out, and the recitations contained in the order overruling appellant's motion for a new trial so show, that the trial court at that time "tendered to the defendant in open court the witness Herbie Franklin Farris for the purpose of perfecting his bill of exceptions, which tender was refused by the defendant . . . . "

So far as the appellant was concerned, his bill of exception was entirely completed and perfected at the time he asked that the testimony be reopened, for he made the request, offered the witness, and stated what the witness would testify, if permitted.

If the state was in position to show, on the motion for new trial, that the witness would not have testified as claimed or was in position to show the existence of any other fact or facts which would justify the action of the trial court in refusing to reopen the case, it should have done so. Not having done so, the presumption must follow that the state was not in such position.

To my mind, this is just another occasion where an accused has been deprived of his substantial rights without justification or excuse. It occurs to me that the least semblance of justice would require that the appellant be entitled to reopen the case and put in evidence facts material to his defense — which facts would have destroyed the state's case.

Appellant was entitled to have that testimony before the jury upon the trial of the case. The jury may have rendered a different verdict had the testimony been before them. What may or may not have been developed on motion for a new trial is therefore of little comfort.

If appellant could not have proved what he said he could prove, the state ought to have so shown, for it was under that

burden if the error in refusing to reopen the testimony was to be obviated. The state made no effort to comply with that burden. No excuse can be applied to that failure other than that it could not.

For the error in refusing appellant permission to reopen the case after the testimony had closed and before the argument began, the judgment should be reversed and the cause remanded.

I respectfully dissent to the affirmance of this case.